71   805
q72   131
q72   137
71   805
83   492

## M. FERGUSON *v.* THE STATE.

1. SEDUCTION.   *Code* 1892, § 1298.   *Indictment.   Evidence.   Chastity.*

    Section 1298, code 1892, under the title " seduction," is as follows: " If any person shall obtain carnal knowledge of any woman, or female child over the age of sixteen years, by virtue of any feigned or pretended marriage or any false or feigned promise of marriage, he shall, upon conviction, be imprisoned in the penitentiary not more than five years; but the testimony of the female seduced, alone, shall not be sufficient to warrant a conviction."   Under this statute it is not necessary to aver in the indictment, or prove, the previous chastity of the female.

2. SAME.   *Indictment.   Evidence.   Certainty.*

    If it reasonably appears from the indictment and the evidence that the woman seduced was unmarried, a conviction otherwise proper will not be set aside merely because of the absence of definite or positive averment and evidence as to this.

3. SAME.   *Promise of marriage.   Testimony of female.*

    It is admissible to show by the testimony of the female alleged to have been seduced, that she yielded because of a promise of marriage, and her reliance thereon.

4. SAME.   *Evidence of subsequent intercourse.   Immaterial error.*

    The admission of testimony of the woman as to intercourse with the accused and the birth of a child, after the alleged seduction, the former being admitted by accused and the latter not controverted, although erroneous, will not cause a conviction otherwise proper to be set aside, it not appearing that accused was prejudiced.

5. SAME.   *Accused; whether married or not.   Evidence.*

    While it is immaterial to the crime of seduction whether the accused be married or unmarried, the fact that he was single may properly be shown, as this may have been potential in influencing the female.

6. SAME.   *Code* 1892, § 1298.   *Extent of corroborating evidence.*

    Although, under § 1298, code 1892, the uncorroborated testimony of the woman seduced is insufficient to warrant a conviction, it is not necessary

that she be corroborated as to every fact essential to make out the crime. It is sufficient if she be supported by other evidence as to the facts of the promise of marriage and the act of sexual intercourse.

FROM the circuit court of Panola county.

HON. EUGENE JOHNSON, Judge.

The case is stated in the opinion.

*Stone & Lowrey,* for appellant.

Section 1298, code 1892, is clearly a statute against the crime of seduction, one intended to protect womanly virtue. True the section uses the language "any woman," etc., but it presupposes chastity. Its title shows this. Besides, it refers in its concluding part to "the female seduced." See *Wilson* v. *State,* 73 Ala., 527.

It is everywhere held that when the female is unchaste there can be no seduction. 40 Ark., 482; 33 Mich., 112; 49 Cal., 9; 3 L. R. A., 529; 17 Or., 238. The statute further presupposes the woman to be single. *Wilson* v. *State, supra.* The indictment is fatally defective in failing to aver that she was unmarried and chaste. 21 Am. & Eng. Enc. L., 1046; 104 Mo., 644; 1 Wis., 209; 1 Bishop Cr. Pro., § 1106.

It is not always sufficient to follow the language of the statute. *Harrington* v. *State,* 54 Miss., 490.

It was error, after the woman had testified to one act of sexual intercourse, to give in evidence others and even the birth of a child long after the alleged seduction. 33 Mich., 112; 55 N. Y., 644.

The fact whether appellant was married or unmarried could neither exculpate nor inculpate him. Evidence as to this was erroneous. See Rice on Crim. Ev., 868; 110 N. Y., 188.

*Frank Johnston,* attorney-general, for the state.

The authorities are divided as to whether the indictment should aver the previous chaste character of the woman. Our statute does not include the fact of chastity in its defini-

tion of the offense. I think the weight of authority and reason is in favor of the position that chastity is presumed, and need not be averred or proved by the state. 40 Ark., 487; 5 Iowa, 389, 430; 32 *Ib.*, 262; 27 Mich., 134.

It was fairly left to the jury to say whether the woman consented because of a promise of marriage.

The testimony as to repeated acts of intercourse, if erroneous, became wholly immaterial, since accused himself testified as to them, admitting the fact, and since the defense is not a denial of acts of intercourse, but of a promise of marriage.

That accused is unmarried was competent to be shown.

WOODS, J., delivered the opinion of the court.

The action of the trial court in overruling the demurrer to the indictment is brought under review by the first assignment of error. The demurrer raises two questions, and we examine them in their order: (1) The indictment does not charge that the woman alleged to have been seduced was of previous chaste character; (2) the indictment does not charge that, at the time of the alleged seduction under promise of marriage, the woman was unmarried.

On the first proposition it is to be said that § 1298, code 1892, prescribes the punishment for seduction of any woman, or female child over the age of sixteen years, by means of pretended marriage or of false promise of marriage. The object is to protect the chastity of women and children above sixteen years of age (seductions in other cases being provided for in §§ 1002, 1004) from attack by false marriages or false promises of marriage. The statute, *ex vi termini,* is to be confined to the abuse of unmarried females and unmarried females of previous chaste character. But the previous chastity of the female said to have been seduced need be neither alleged nor proved. The presumptions of law spring from and rest upon the general knowledge and universal experience of mankind. In the multitudinous and varying

conditions and ranks of womanhood, personal chastity is the rule; a lapse from virtue is the rare and painful exception. Until the rare exception has been proved, the legal presumption must prevail, and this legal presumption need be neither charged nor proved.

The adjudged cases and authorities holding the contrary view will be found, on critical examination, to stand on one or the other of two grounds, or on both, viz.: The statutes creating and defining the crime of seduction in some of the states employ the words, "previous chaste character," or similar words, and so are supposed to require those words in indictments for such offenses. This fact appears in all, or nearly all, the reported cases which we have examined in which this identical question was passed upon. This is notably true of the early and unsatisfactory case of *West* v. *State*, 1 Wis., 186, which is the foundation and perpetual reference of the later cases holding that chastity must be alleged and proved. But in these later cases, which follow the early Wisconsin decision, we shall discover, on thorough inspection of the various statutes of the several states on which the indictments founded thereon were examined, and the sufficiency of their averments passed upon, that the words "previous chaste character," or other like ones, are uniformly to be found, as we now remember the results of our extensive and protracted research on this point. Said that eminent jurist, Cooley, J., speaking for the supreme court of Michigan, in *People* v. *Brewer*, 27 Mich., 134, commenting on the early Wisconsin case of *West* v. *State*, hereinbefore referred to: "The case of West . . . was decided upon the phraseology of the Wisconsin statute, which was thought to make the 'previous chaste character' of the person seduced an ingredient in the offense. Our statute [Michigan] is very simple, and merely provides that, 'if any man shall seduce and debauch any unmarried woman, he shall be punished,'" etc. § 7697, L. 1871.

The Wisconsin court itself, in the opinion in West's case,

employs this language: " The previous chaste character of
the female is one of the most essential elements of the of-
fense, made so by the express words of the statute," etc.
Bishop, in his works on Statutory Crimes, § 1106, and Crim-
inal Procedure, vol. 1, §§ 647–8, suggests, rather than de-
clares, that the previous chaste character of the female
seduced should be averred and proved in cases where these
words are not in the statute.   But the adjudged cases to
which he refers as his authority for the suggestion do not
support his text.   The case of *People* v. *Roderigas,* 49 Cal.,
9, is authority for the proposition involved in the Wisconsin
case— *West* v. *State*—already adverted to, that when the stat-
ute creating and defining the crime makes the previous
chaste character an essential ingredient in the offense, then
it· is necessary to charge and to prove this ingredient.   In
the case of Roderigas the indictment, which was demurred
to, charged the prisoner with enticing an unmarried female
to a house of ill fame for the purposes of prostitution, with-
out alleging that she was of previous chaste character.   On
an appeal from a judgment sustaining the demurrer, the su-
preme court held the indictment insufficient for failing to
charge the previous chaste character of the female enticed
to the disreputable house, the court saying: " To entice a
female into a house of ill fame or elsewhere for the purposes
of prostitution is not an offense under § 265 of the penal
code, nor under the provisions of the act of March 1, 1872,
unless such female was of previous chaste character."   By
reference to the penal code of California and the act of March
1, 1872, of that state, it was, we find, made penal to entice a
female of previous chaste character into a house of ill fame.
The decision rests upon the proposition that it was not the
enticing to a house of ill fame of *any* female which was
made a felony,. but only one of previous chaste character.
The other case on which Bishop's text is supposed to rest is
that of *West* v. *State,* 1 Wis., 186, already examined.

   Counsel for the accused also cite us to 21 Am. & Eng. Enc.

L., p. 1046, and note 7. But this authority is content to observe that "probably this averment [previous chaste character] must be made, even though the statute makes no mention of chastity, as that, as has been stated, is regarded by the courts as an essential feature of the offense." The cases cited by the author in support of this qualified and guarded remark, and found in note 7, are *Polk* v. *State,* 40 Ark., 482; *People* v. *Clark,* 33 Mich., 112; and the *People* v. *Roderigas,* 49 Cal., 9. The last-named case, as we have already seen, is not support for the rule as guardedly announced by the Am. & Eng. Enc. L. The decission in that case was upon a statute which made penal the enticing of a female of previous chaste character into a house of ill fame for the purpose of prostitution.

In *Polk* v. *State,* 40 Ark., 482, the prisoner was indicted under a statute which made penal the "obtaining carnal knowledge of any female by virtue of any feigned or pretended marriage, or of any false or feigned promise of marriage." The question on the indictment arose thus, as is stated in the opinion of the court: "The defendant moved in arrest of judgment, because the indictment only stated the parties were past the age of puberty, and did not state that they were of full age, and so able to make valid and binding promises to marry without consent of parents or guardian, nor even that they were of sufficient age to be capable in law of contracting marriage. This objection is frivolous." It thus appears that the necessity for the averment and proof of previous chaste character was not raised or passed upon in any rulings in which that point was directly involved. It is worthy of remembrance, however, that in considering the proper method of impeaching the previous chaste character of the female alleged to have been seduced, the court used this language: "Since, in the female sex, chastity is the rule and want of the exception, the presumption is in favor of virtue. No evidence is required to establish it in the first instance, and the burden is on the defendant, if he would

assail it, notwithstanding the presumption of his innocence."
The remaining case cited in the 21 Am. & Eng. Enc. is that
of the *People* v. *Clark*, 33 Mich., 112. In this, as in the Ar-
kansas case just referred to, the necessity for averring and
making proof of previous chaste character is not raised or
passed upon. The error of the editors of that most valuable
work is all the more surprising in view of the following pas-
sage from the opinion of the court in the Clark case, in 33
Mich., to wit: " The chastity of the female at the time of the
alleged act is in all cases involved, and the presumption of
law being in favor of chastity, the defense have the right to
show the contrary." It would appear to necessarily result,
from what is said both in the Arkansas and Michigan cases,
that the reverse of the guarded statement of the text of the
editor of the encyclopedia is correct. If the previous chas-
tity of the woman is a legal presumption, no evidence need
be offered to prove it primarily. And if no evidence need
be offered to prove it, its averment would seem to be un-
necessary.

It remains to consider the other ground of contention on
this point, which is that the previous chastity must be
averred in the indictment and established in the evidence;
otherwise the presumption of the defendant's innocence will
be overthrown by the presumption of the woman's purity.
To put it otherwise, the strength of the presumption of the
defendant's innocence cannot be weakened by any counter-
presumption of womanly virtue. This same view was ably
urged upon our attention in the case of *Hemingway* v. *The
State*, 68 Miss., 371. We need look no farther than the opin-
ion we then delivered in order to silence the present conten-
tion: " By this second proposition we suppose it is meant to
be said that the presumption of innocence is affected or de-
stroyed in part by the legal presumption of the correctness
of the records, and that this favored presumption of inno-
cence cannot be met by another presumption, but must be
destroyed by positive proof. This contention rests upon the

unsubstantial ground that the general presumption of inno-
cence is irrebuttable by any other and favored presumption.
The rule is, in conflicting legal presumptions, the special and
favored must prevail or take precedence over the general,
and the practical operation of this rule we see constantly
exemplified in trials for murder.    In these trials for even
capital offenses, we shall constantly find the legal presump-
tion of malice arising from the use of a deadly weapon, and
we shall see the presumption taking precedence over the
general presumption of innocence, in the absence of any
other evidence showing circumstances of justification or ex-
cuse for the homicide.  .  .  .   But, after all, it remains to
be said that  .  .  .   all that was done was to permit the
jury to be informed that there was a legal presumption of
the correctness of the official books, and, if this was not per-
missible, then it must be conceded that the presumption of
innocence is irrebuttable by any other presumption—a prop-
osition not to be tolerated in a court of law—for conflicting
presumptions must always go to the jury as other conflicting
evidence."

There was no attempt to show any want of virtue in the
unhappy girl in the case at bar before she fell a victim to the
devilish lust of the prisoner.   Undeniably, he robbed his
victim of the jewel of her virginal purity, and it is with
scoundrelly grace only that he can invoke the vanished fig-
ment of the legal presumption of his innocence, insisting that
the well-founded and universal presumption of maidenly mod-
esty and womanly virtue shall be overlooked and denied the
wretched creature whose character he has put to death.

As to the second ground of demurrer, it is sufficient to say
that we are of opinion that the indictment reasonably shows
that the female seduced was unmarried.   It is to be regretted
that the pleader did not distinctly and positively aver that
the female was unmarried; but she is twice addressed by the
prefix to her own proper name which is solely and univer-
sally applied to an unmarried woman, and she is described

as one to whom offers of marriage were falsely made—lawful marriage—and hence, she is, by necessary inference, a female capable of contracting such marriage; that is, that she was marriageable, unmarried. The evidence, too, we see with surprise, is not direct and positive as to her state; but, again, it reasonably appears that she was unmarried, for it is shown that she was a member of her father's household, and living under parental control. She was uniformly addressed by the prefix to her name used only in cases of unmarried females. She received from the prisoner such attentions as mark the courtship of the marriageable female by the man who would make her his wife; and she is called in the letters written her by the accused, "my girl, my love," etc, and he writes her: "I don't know when we will marry, but some time, of course," etc. But one conclusion can be reached, on the averments of the indictment and on the evidence produced on trial, by an honest mind, and we shall refuse to hunt for or yield to mere technical rules of pleading and evidence, now happily growing less and less regarded by courts striving to administer substantial justice, where the pleading avers, and the evidence proves with reasonable certainty, that which a closer adherence to technical forms would have made stand out in bolder relief.

That the unfortunate girl was of previous chaste character the law presumes, and this legal presumption it was not incumbent upon the state to aver or prove primarily. We have no doubt from the pleading and the evidence that she was unmarried, and we are therefore of opinion that the demurrer was properly overruled.

The second assignment of error draws in review the action of the court below in permitting the unhappy creature seduced to tell the jury that she yielded her person to her lover's embrace because of his promise of marriage and her blind reliance thereon. We approve the action of the court, for, in the very nature of things, it will be impossible, generally, perhaps ever, to make this evidence if the ruined

victim of the betrayer is forbidden to speak. As she alone *knows*, she cannot be held incompetent to communicate that knowledge to court and jury. We are aware that the authorities are not harmonious here, but reason and the preponderating weight of authority pronounce in favor of the righteousness of allowing the outraged and ruined female to testify that she fell because of the believed promise of marriage of her seducer. *Kenyar* v. *People*, 26 N. Y., 203; *Armstrong* v. *People*, 70 N. Y., 38; *State* v. *Brinkhaus*, 34 Minn., 285.

The third assignment challenges the propriety of the trial courts permitting the female seduced to testify as to acts of sexual intercourse between herself and the prisoner, and as to the birth of her child subsequent to her seduction. There was no controversy as to these facts. The repeated acts of sexual intercourse were testified to by the accused, and the birth of the child was not disputed. The evidence, we think, was incompetent, either as connecting accused with the crime of the seduction or as corroborating the evidence of the female seduced. But we are unable to see in what manner it could have excited the minds of the jury against the prisoner. Confessedly, after having first yielded her person to her betrayer, and after the revolting crime of her seduction had been accomplished, she had sexual intercourse many, many times with her seducer, and, confessedly also, the child afterwards born was not the fruit of the first intercourse had when she fell from the path of virtue. We can readily see how this might have prejudiced the victim, who thus continued to yield herself to his embraces, by causing the jury to pause and hesitate in determining whether she was the real owner of a previous chaste character when she took this alleged first step downward on the way to irretrievable shame. How it could have roused the feelings of a jury against the man we are at a loss to conceive. The error is not, in this case, reversible error.

On the fourth assignment, it is necessary only to say that

whether the accused was married or unmarried was wholly immaterial. If he was, in fact, unmarried, as he testifies, the fact was not improper to be shown to the jury, for it may have had power in facilitating his approaches to his object, and have been potential in moving his victim to listen to him, and, listening, yield.

The second instruction, of which complaint is made in the fifth assignment of error, is not open to the criticisms made by counsel. It does not authorize a conviction on the uncorroborated evidence of the woman seduced; it is silent on that point, but, more than once and plainly, the jury was instructed that, in order to convict, the evidence of the woman seduced must be corroborated. This instruction is free from the fatal vice mistakenly supposed by counsel to inhere in it. By it, the jury were informed that, if their minds and consciences were satisfied by the evidence that the sexual intercourse was brought about by virtue of a promise of marriage made by defendant, before or at the time of the alleged intercourse, and that, if this satisfaction of minds and consciences was produced by conscientious belief of the evidence, then the jury believed beyond all reasonable doubt, and they should convict, although they might believe from the evidence, further, that the woman seduced afterwards (after her fall) yielded herself to the defendant's embraces to gratify her own passions—her own aroused and now uncontrolled passions—and was not now, since her seduction and fall from virtue, a woman of chaste character. Whether the unhappy wretch continued to wallow in the mire and filth of personal depravity, to which defendant's revolting villainy had reduced her, in no way affected his guilt or her previous purity, if these had been established satisfactorily.

The third instruction for the state is neither vague nor uncertain. By this charge the jury were simply informed, at the state's request, that corroboration of the testimony of the female seduced was necessary before conviction could be had. This was true, and if the accused desired to have de-

fined the extent and reach of the general proposition contained in our statute that "the testimony of the female seduced, alone, shall not be sufficient to warrant a conviction," he should have asked supplementary and explanatory instructions, with ampler definitions of the general statement contained in the state's instruction now complained of.

The sixth assignment goes to the court's action in refusing certain charges for the defendant. The first instruction refused is clearly erroneous. The subsequent acts of intercourse it was sought to have the court tell the jury overcame the presumption of previous chaste character. This was not true in and of itself. The subsequent acts of sexual intercourse were matters to be carefully pondered by the jury, and their character and value were fair subjects for argumentation before the jury, but nothing more. To instruct the jury that these subsequent acts of illicit personal intercourse had overcome the legal presumption of the previous chaste character of the woman, would have been to charge upon the weight of the evidence, and, in effect, take the case from the jury.

The second, third and fourth instructions refused were properly refused. The second instruction asked the court to direct the jury that it was the duty of the state to prove the character of the female seduced to have been chaste prior to the act of intercourse which accomplished her seduction. We have already seen that this is not sound. The third refused instruction is improper, because without evidence to support it. The fourth refused instruction is manifestly erroneous, for the reason just given. It was unsupported by the evidence. There is no testimony, nor hint of evidence, that this seduced woman "had already fallen, and was not, at the time, pursuing the path of virtue," and the instruction which assumes as proved that which is not proved would be monstrous.

The fifth refused instruction was also properly rejected by the court below. By it, the prisoner sought to have the jury advised that "all her testimony must be corroborated by

other evidence upon every fact necessary to make out the crime." There is much diversity of opinion as to what extent this corroboration must go. There are cases in which it has been held sufficient corroboration of the female seduced if there was other evidence of the promise of marriage only. At the other extreme, will be found cases holding that the corroborating evidence must support all the necessary elements in the constitution of the crime. The cases lying between these two classes announce the true rule, viz. : The testimony of the female seduced must be corroborated by other evidence as to the promise of marriage and the act of sexual intercourse. The object of the law is to prevent the conviction of one accused on the unsupported testimony of one participating in the commission of the offense. As with the accomplice, so here corroboration to the extent of fairly tending to connect the accused with the commission of the offense, should be held sufficient. The female seduced appears on the witness-stand as *quasi particeps criminis*, and under a cloud. Whatever other evidence will fairly satisfy the jury that she is truthful and worthy of belief must be held sufficiently corroborative; and when she is supported as to the promise of marriage and the act of sexual intercourse—the two great fundamental essentials—the corroboration, we think, will be sufficient. In the case at bar, the corroborative evidence (partly furnished by the defendant's evidence and by his letters) as to the act of intercourse and the promise of marriage is not wanting, and the jury has passed upon its worth and weight, and has, in our opinion, correctly estimated it.

We have here a fresh exemplification of the truth of the inspired maxim : " The way of the transgressor is hard." But if character is to be held safe from infamous attack, and the law for its security is to be maintained and honored, this transgressor should be made to feel just punishment in all its fullness and with inexorable certainty.

*Affirmed.*

71 Miss.—52

COOPER, J., specially concurring.

I concur in the result announced by my brother Woods, but I am not prepared to decide that our statute is applicable only in cases in which the female is of previous chaste character. It is true the codifiers have affixed to the statute the head-line "Seduction of female over age of sixteen by frauds," etc., which is perhaps evidence of their construction. It is also true that the statute declares that "the testimony of the female seduced alone shall not be sufficient to warrant a conviction." But the statute appears to me to include all cases in which carnal knowledge is obtained by the means named. It declares that, "if any person shall obtain carnal knowledge of any woman, or female child over the. age of sixteen years, by virtue of any feigned or pretended marriage or any false or feigned promise of marriage, he shall, upon conviction, be imprisoned in the penitentiary not more than five years; but the testimony of the female seduced alone shall not be sufficient to warrant a conviction."

If the person indicted has, by the means condemned by the statute, obtained carnal knowledge of *any* woman, or female child over the age of sixteen years, he is, in my opinion, subject to conviction and punishment.

CAMPBELL, C. J., delivered the following opinion :

It is not my understanding that there is any difference of opinion among the members of the court as to § 1298, code of 1892, or the decision of this case. All agree that the indictment need not aver that the woman was of previous chaste character, and that it is not necessary to prove that she was. It seems clear that, if carnal knowledge was obtained of any woman, or female child over the age of sixteen years, by virtue of any feigned or pretended marriage, or any false or feigned promise of marriage, the fact that the woman had before yielded her person to another or others, however suggestive of her not having been deceived and misled by the accused, would not free him from the consequence of his act.