WILLIAM W. HOFF *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW.    *Seduction.    Code* 1892, §§ 1004, 1298.    *Indictment.
Woman married matter of defense.*

An indictment for seduction, under Code 1892, § 1004, making it a
felony to seduce a chaste female child under sixteen years of
age, or, under Code 1892, § 1298, making it a felony to have
carnal knowledge of any woman over the age of sixteen years by
virtue of a pretended marriage or false promise of marriage, need
not charge that the woman was unmarried, since her marriage
is a matter of defense.

2. SAME.    *Argument.    Code* 1892, § 1741.

Statements of the district attorney in his closing argument to the
jury, in a prosecution for seduction, that "nobody on earth de-
nies that this defendant" had written a certain letter offered in
evidence, and that "no living soul has denied that defendant se-
duced this little girl," were comments on defendant's failure to
testify, and violative of Code 1892, § 1741, prohibiting such com-
ments.

FROM the circuit court of Amite county.

HON. JAMES H. PRICE, Special Judge.

Hoff, appellant, was indicted, tried, and convicted of seduc-
tion, and appealed to the supreme court. The facts on which
the decision turned are stated in the opinion of the court.

The indictment, leaving off the formal part, is as follows:
"William W. Hoff, late of the county aforesaid, in the county
aforesaid, on September 21, 1903, did then and there unlawfully
and feloniously seduce and have illicit intercourse with one
Ludie Jackson, a female child under the age of sixteen years
old, of previous chaste character." The defendant demurred
to the indictment on several grounds, among them being that
the female is not alleged to have been unmarried. The demur-
rer was overruled. The defendant was sentenced to the peniten-
tiary for ten years. His motion for a new trial was overruled.

*Ratcliff & Wall,* for appellant.

The indictment fails to allege the female seduced was unmarried.

The word "unmarried" is essential in an indictment for seduction whether under § 1298, code of 1892, or § 1004.

Suppose that a female under the age of sixteen years was married, could she then be seduced, or in other words, can a married female under the age of sixteen years be seduced? We take the position that she cannot. If this be true then the averments in the indictment must specifically allege and charge that the female seduced was unmarried, if not it is fatally bad. It was held in the case of *Powell* v. *State,* 20 So. Rep., 4, that previous chaste character meant that the female alleged to have been seduced had never had sexual intercourse with any other person. Therefore we think it logically follows, drawing our conclusions from the opinion rendered by Judge Woods in the above mentioned case, that a married female, whether under the age of sixteen or over the age of sixteen, cannot be seduced. Then if this be true it must unquestionably follow that the indictment must show affirmatively on its face that the female seduced, whether over the age of sixteen or under the age of sixteen, was unmarried.

It was held in *Cirk* v. *Long,* U. C. C. P., 363, and *Anderson* v. *Rainey,* 12 U. C. C. P., 536, that a widow cannot be seduced as an unmarried woman. The district attorney said in his argument to the jury, "No living soul had denied that defendant seduced this little girl." Surely this referred to defendant, and was an effort to induce the jury to convict because he had so testified. *Yarbrough* v. *State,* 70 Miss., 593; *Brown* v. *State,* 81 Miss., 143; *Bunckley* v. *State,* 77 Miss., 540.

*William Williams,* attorney general, and *E. H. Ratcliff,* district attorney, for appellee.

It is not necessary to allege in an indictment under Code

1892, § 1004, that the female seduced was unmarried.  The indictment is in the language of the statute and is good.

As to the alleged improper remarks of the district attorney in his argument to the jury, we call attention to the fact that the special bill of exception taken to these remarks only purports to give fragments of sentences and garbled statements culled from different parts of the argument to suit the purpose of counsel, and we respectfully submit that the special bill of .exception is not such as the court in fairness can take recognizance of.  It is utterly impossible for the court to say that these remarks were proper or improper unless the whole sentences were set out in the bill of exceptions and the context taken down and embodied in it.  It is scarcely to be supposed that a prosecuting speech is ever made but that some isolated words could be selected therefrom which, taken alone, would appear exceedingly improper, but which, were the whole context before the court, might appear as not only harmless but entirely legitimate.  It is the duty of one taking exceptions to remarks of opposing counsel to set out in his bill of exceptions at least a sufficiency of what was said to enable the court to pass intelligently upon it.  If it be true that defendant's counsel can seggregate from their proper connection words which, when taken alone, appear improper, although the whole of what was said in that immediate connection would assume quite a different aspect, as was done in this case, then indeed there is no security in trials, no stability in the work of courts, to say nothing of the unfairness of the practice.  Take for instance the remark alleged to have been made by the district attorney and quoted in a special bill of exceptions in reference to the letter written by the defendant to the prosecutrix, wherein the district attorney is charged with saying while holding the letter, "and nobody on earth denies that he wrote it," and suppose the full context would show that he said "of all the witnesses introduced here by the defendant not a soul on earth denies that he wrote it, or insinuates that it is not in his handwriting, or questions its authenticity, then

the remarks would be entirely proper, especially so when the defendant's counsel had urged to the jury that they had shown it was not authentic. Or, take the other piece of a sentence they charged him with using, "No living soul has denied that the defendant seduced this little girl;" and suppose the full sentence would read like this, "No living soul has denied that this defendant seduced this little girl while they were on the stand and had the opportunity to do so. The defendant's counsel, it is true, deny it, but the sworn witnesses on the stand do not attempt it." Such a comment would have been beyond the pale of criticism and entirely legitimate. If the prosecuting attorney is to be put on trial for improper conduct for the use of language prohibited by the laws of the land he should be tried on whole sentences at least and not on select parts of sentences, and these particular parts selected by his adversary. Common fairness to him would suggest as much, saying nothing of the great interest of the state in upholding the court and enforcing the law.

Argued orally by *Clem V. Ratcliff* and *H. B. Wall*, for appellant, and by *E. H. Ratcliff*, district attorney, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

One of the grounds of the demurrer to this indictment, framed on § 1004 of the code of 1892, is that the female is not alleged to have been unmarried. Neither under § 1298 nor under § 1004 is it necessary that the indictment should allege that the woman was unmarried; that is matter of defense. It seems to have been overlooked by counsel that we decided in *Norton* v. *State*, 72 Miss., 137, 16 South., 267, 18 South., 916, 48 Am. St. Rep., 538, that this averment was not necessary in an indictment framed on said § 1298. We there said: "It is not necessary to allege that the man was unmarried, though, if married, and the woman knew it, no conviction could be had. Nor, it seems, is it essential that the indictment should aver that

the woman was a single woman, this, it is said, being matter of defense. Bish. Dir. & Forms, sec. 950, note 3. But, as held in *Ferguson* v. *State*, 71 Miss., 805, 15 South., 66, 42 Am. St. Rep., 492, it is better practice to make the averment." Mr. Bishop says on this subject (Bish. Dir. & Forms, sec. 950, note 3) : "This expansion beyond the statutory words is simply less questionable than the former one. Evidently, if the woman is married, the offense becomes impossible; because the man's promise of a marriage, which she knows cannot take place, will be no inducement to the yielding up of her person. Stat. Crimes, sec. 638. Still as the indictment is required only to set out a *prima facie* case (Crim. Pro., 1, sec. 326), and the fact that the woman's marriage would be mere matter of defense, it is difficult to discern any necessity for thus negativing, in allegation, such defense." It will be observed that he puts the word "unmarried" in the form given in the text in brackets, showing it to be good practice to aver it, but also showing it not to be an essential averment. The court did not err, therefore, in overruling the demurrer to the indictment on this ground. The other grounds of demurrer are not worthy of serious consideration.

The objection most seriously pressed is that the court below allowed the district attorney, in his argument, to make use of certain language in his opening argument and certain other language in his final argument. The language objected to in his opening argument is as follows : "Gentlemen of the jury, knowing the character of the people connected with this case as well as I do, and having heard all the evidence detailed in this horrible tragedy, I am the worst surprised man in the world that the defendant is alive." In his closing argument the district attorney said, while holding a letter, which was introduced in evidence, in his hands, and commenting on it, the letter having been introduced as written by the defendant to the woman in the case, Ludie Jackson : "Nobody on earth denies that he wrote it. In his closing argument the district attorney

also said: "No living soul has denied that defendant seduced this little girl." It is too plain for argument that this language addressed to the jury in the closing argument of the district attorney referred directly to the defendant, and was a comment on his failure to testify; and under the authority of *Reddick* v. *State,* 72 Miss., 1008, 16 South., 490; *Sanders* v. *State,* 73 Miss., 444, 18 South., 541, and *Yarborough* v. *State,* 70 Miss., 593, 12 South., 551, the error is fatal error. This is a much clearer case for reversal than the Reddick or Sanders case was; for in Reddick's case, after the district attorney had said, referring to the defendant, "He has not denied it," he changed it to "It has not been denied," and the court immediately instructed the jury to disregard the remark; and on a motion for a new trial in that case the district attorney testified that he did not intend to comment on the failure of the accused to testify, but only meant that the testimony as to the admission was undisputed. Yet this court held, notwithstanding all these precautions, that, having used language that could reasonably be construed as a comment, his intention was immaterial. And in the Sanders case, although the court promptly rebuked counsel and instructed the jury to disregard the fact alluded to, and although counsel himself asked that the remark be considered withdrawn, nevertheless it was held that the error was not cured. Here, on the contrary, although the counsel for the defendant strenuously objected to the remarks quoted, the court overruled his objection; and the counsel for the defendant then again earnestly asked the court to exclude the remarks, but the court refused to do so. How much more clear and fatal is the error here than in the case of Reddick and Sanders!

*Reversed and remanded.*