THE STATE OF IOWA, Appellee, v. HARVEY SMITH, Appellant.

**Seduction:** JURORS: QUALIFICATION. The qualification of a juror is
1  a question for the trial court to determine, and its action will not be disturbed in the absence of abuse of discretion.

**Same.** A defendant in a criminal case, who has discussed the facts
2  with a juror, will not be heard to complain because the court sustained the State's challenge to the qualification of the juror.

**Failure to swear a witness.** A witness will be presumed, on appeal,
3  to have been sworn before testifying, unless the contrary clearly appears from the record.

**Waiver of neglect to swear a witness.** Where it is known to defend-
4  ant during the trial, that a witness for the State had not been sworn, and no objection to the testimony is made at the time, there is a waiver of the requirement.

**Previous chaste character.** Chastity of character is essential to the
5  crime of seduction, and where the evidence leaves the question in dispute, it is for the jury to determine. A finding of previous chaste character in this case is sustained.

**Instructions:** CORROBORATING EVIDENCE. In a prosecution for seduc-
6  tion, the sufficiency of the corroborating evidence is always a question for the jury. In the instant case the court's instructions, when considered as a whole, comply with the rule.

**Additional argument.** Under the circumstances, an additional argu-
ment by the State, pointing out the testimony on which its principal
argument was based, was properly filed.

*Appeal from Wapello District Court.*—HON. ROBERT SLOAN,
Judge.

THURSDAY, JUNE 9, 1904.

THE defendant was convicted of the crime of seduction,
and he appeals.— *Affirmed.*

*Jaques & Jaques,* for appellant.

*C. W. Mullan,* Atty. Gen., and *Lawrence De Graff,* Asst.
Atty. Gen., for the State.

BISHOP, J.— I. As the jury was being impaneled,
Frank Creswell, a member of the regular panel, was called
into the box. Upon his *voir dire* examination, he answered

1. JURORS:
qualification.

that he had on that morning talked with the de-
fendant about his case; that defendant told him
the facts as he claimed them to be, and that thereby some im-
pression was made on his mind. He says he told defendant
before the talk that he was a juror, and that he does not know
who commenced the conversation. He further says that to
some extent he had formed an opinion in regard to the case,
but not from what defendant told him; that the talk with
defendant would not influence his verdict, and that he had no
opinion that would interfere with his sitting as a juror. A
challenge was interposed by the State and sustained, the de-
fendant saving an exception. The discretion of the trial
court must govern very largely in the matter of the selection
of a jury. We will not interfere unless there is made to
appear a positive violation of law or a clear abuse of discre-
tion. And it is for the court to determine whether the exam-
ination of a proposed juror discloses his fitness, and it is not
precluded from rejecting him although he may in terms de-

clare that he is free from opinion or prejudice, provided that
the examination as a whole discloses his unfitness.   In the
instant case, there was no violation of any rule nor an abuse
of discretion.  · On the contrary; the ruling of the trial court
was such as to meet our unqualified approval.   The juror was
either wholly ignorant respecting the dignity and importance
of the duty resting upon him as such, or he was wholly indif-
ferent — using the mildest expression possible — to the re-
quirements of such duty.   If the former, he needed the lesson
afforded by his rejection, to say the least; if the latter, he
should have been sharply rebuked, and discharged from fur-
ther service.

As to the defendant, he must have known that it was
likely that Creswell would be called as a juror in his case, and
that, in any event, it was grossly improper for him to make
an antetrial presentation of his case to a jury-

2. SAME.

man.   And certainly we will not hear him to
complain that he has not had a fair trial, because forsooth a
juryman, upon whose mind he had previously made an im-
pression by a private presentation of his defense, was not
allowed to sit in judgment upon his case.

II.   In argument, counsel for appellant insist that there
should be a reversal of the judgment of the trial court because
it appears from the record that the prosecuting witness, Nellie

3. FAILURE TO
SWEAR A
WITNESS.

Curry, was allowed to give her testimony with-
out being sworn as required by law.   The rec-
ord does not disclose in terms that any of the witnesses, either
for the State or for defendant, were sworn before testifying.
It appears that Nellie Curry, among others, was called as a
witness for the State, and, in answers to questions on direct
and cross-examination, she detailed the story of her alleged
seduction.   After she had left the witness stand she was re-
called, and there was propounded to her by the court the fol-
lowing question:   " Was the testimony heretofore given by
you true and correct ? " and this she answered in the affirma-
tive.   Being cross-examined by counsel for defendant, she

said that she did not know, when giving her testimony, that she had not been sworn; that she was not present when the other witnesses were sworn; that Mr. Emery had asked her if she had been sworn, and she told him she had not. It is a plain requirement of law that witnesses shall affirm or be sworn before being allowed to testify. It is the duty of the court to see that this is done, and we will assume that the requirement was observed, unless the contrary is made to appear. Can it be said that the record before us makes it clear that there was a failure to comply with the legal requirement? We have recited above all there is in the record relating to the subject. There is, then, no direct showing to the effect that the oath was not administered. The question propounded by the court, and the answer thereto, cannot be accepted as showing failure, and, in our view, the cross-examination disclosed no more than that the witness had said to Emery, out of court, that she had not been sworn. She does not testify that she was not sworn, and there was no attempt to otherwise make the fact appear. The mere circumstance that one who had been a witness in a case is shown to have subsequently made the statement, out of court, that she had not been sworn before testifying, cannot be accepted as sufficient to overcome the presumption of correct proceeding in which we are required to indulge, and so authorize a reversal of the judgment entered. If the fact was as contended for by appellant, he should have made it appear in some tangible way. This he did not do, nor did he object to the presence of the testimony in the record, or move to strike it out, and thus require a reintroduction of the witness.

Moreover, there is authority for saying that a verdict and judgment should not be set aside in any event on account of a mere irregularity occurring upon the trial, such as that a **4. WAIVER OF NEGLECT TO SWEAR A WITNESS.** witness has inadvertently been allowed to testify without being sworn, it appearing that the fact was known to defendant at the time, or, at least, that his attention was called to it during the progress of the

trial, and no objection having been made or exception taken by him. That a person charged with a crime is entitled to be confronted with the witnesses against him is very true, and it may be conceded that due process of law requires that such witnesses be sworn before testifying. But a strict adherence to these requirements may be waived by the accused. " It has been expressly ruled that, when a prisoner permits illegal testimony to be given to the jury without objection, he cannot afterwards raise any claim of privilege on account of the admission of such evidence." *State v. Polson,* 29 Iowa, 133. The objection must be made as soon as discovered, and it is only where discovery follows the rendition of the verdict that defendant can be heard on such ground to assail the verdict or the judgment entered thereon. *State v. Lugar,* 115 Iowa, 268.

III. The contention on behalf of appellant to the effect that the evidence for the State fails to show that the prosecutrix was of previous chaste character at the time of her alleged

5. PREVIOUS CHASTE CHARACTER.

seduction may be disposed of in brief. She testifies that she had known defendant from childhood, and commenced keeping company with him when she was eighteen years of age, and this continued for a year or more before she yielded to his persuasions and consented to sexual intercourse with him. In positive terms she declares that she never had been thus intimate with any other man. Defendant does not deny the fact of intercourse, nor is it pretended on his behalf that the record shows the prosecutrix to have ever sustained a similar relation with another. His contention is based upon two grounds: (1) That her consent to intercourse with him was based solely upon his promise to marry her should pregnancy result; (2) that her previous conduct as related to other men had been so far improper and indecent, and so at variance with that which is common to women pure in mind and innocent of heart, that chastity of character cannot be said to have been established. Chastity of character in the prosecutrix is essential to the crime of se-

duction.   Such is always a question of fact, and, when the subject of any material conflict in the evidence, it is a question for the jury.   Taking the evidence of the prosecutrix in this case, and we think the jury may very well have believed that the subject of marriage had been discussed between her and the defendant before there was any suggestion of sexual intercourse; that defendant had said that he wanted to marry her, and that she had consented thereto.   This being true, the first ground of contention is without force.

As to the second ground relied upon, it is to be said that several witnesses testify to acts and conduct on the part of the prosecutrix which, if true, cannot be said to comport with any very exalted notion of propriety, or indicate a womanly character normal in the matter of morals and chastity.   But the conduct so ascribed to her was in the main denied, and in her denial she was to some extent corroborated by other witnesses. It remains only to be said, accordingly, that the controverted question involved was properly submitted for a verdict, and the finding of the jury must be accepted as conclusive.

IV.   Complaint is made of the eighteenth instruction as given by the court.   Therein the jury was told that circumstantial evidence may be relied upon to establish the corrobo-

**6. INSTRUCTIONS: corroborating evidence.** ration required by the statute in such cases, " and, if it be shown by evidence, other than that of the prosecuting witness, that the defendant visited her at her home or elsewhere, and that they kept company together, and acted as lovers usually do, is sufficient to justify a conviction, if, when considered in connection with her evidence and all the other evidence in the case, you are satisfied beyond a reasonable doubt of the defendant's guilt.   You will bear in mind, however, that you are the judges of the sufficiency of the corroborating evidence when it is such as tends to connect the defendant with the commission of the offense charged."   The contention of the appellant is that by the instruction the court undertook to determine the sufficiency of the evidence, and thus usurped the province of the jury.   We

do not think the instruction is vulnerable to the criticism thus made.   In the seventeenth instruction the jury had been told of the necessity for corroborating evidence, and that " mere proof of acquaintance and opportunity to have committed the offense is not sufficient, but must be such corroborating evidence as tends to connect the defendant with the commission of the offense and corroborate her evidence in relation to the crime charged."   The effect of the instructions, taken together, was to tell the jury that while acquaintance and opportunity, though made to appear, will not suffice of themselves, yet if it appear in addition thereto that visits were made, company was kept, and acts and conduct were indulged in such as usually characterize lovers, the jury, in considering such evidence in connection with all the other evidence in the case, would be warranted in finding therefrom that corroboration had been sufficiently established.   The jury is expressly told, however, that the question of the sufficiency of the corroborating evidence is to be judged by them.   Accordingly there was left for a verdict the ultimate question, depending for its answer upon the frequency and character of the visits, in what way and to what extent there was keeping of company, and what was the nature and character of the conduct relied upon to indicate the relationship of lovers.   If sufficient to satisfy the jury, then corroboration was made out; otherwise not.   The instruction, taken as a whole, is not in conflict with what was said in *Slate v. Bess,* 109 Iowa, 675, cited and relied upon by defendant.   In that case the jury was instructed that, if they found " that the defendant visited the prosecutrix as a suitor, this, while by no means conclusive, will be sufficiently corroborative of her evidence tending to connect the defendant with the offense."   Respecting the instruction thus given it is said, in the opinion, " that the jury might well have understood from it that, if the defendant visited the prosecutrix as a suitor, proof of the fact alone was sufficient corroboration of the testimony.   While that may have been true, it was for the jury, and not for the court, to determine the fact."

We are fully disposed to adhere to the rule as announced in that case, and to hold that the sufficiency of the corroboration is always a question for the jury to decide. As we think, the trial court in the instant case undoubtedly had the rule in mind, and intended, by the last sentence of the instruction given, to make it clear to the jury that while corroboration might be made out by facts and circumstances such as were referred to, still the sufficiency thereof was for them to determine. As a whole, therefore, the instruction was within the rule.

A motion by appellant to strike an additional argument filed on behalf of the State was submitted with the case. An examination of such additional argument discloses that it was 7. ADDITIONAL ARGUMENT. made in answer to charges, found in the reply argument of appellant, to the effect that counsel for the State in their principal argument had misstated the record. The purpose of the additional argument was to point out to us the testimony upon which counsel based their statements, and under the circumstances we think there was no impropriety in so doing. The motion is therefore overruled.

Finding no error in the record, the judgment must be, and it is, AFFIRMED.