STATE OF IOWA v. BURTON BENNETT, APPELLANT.

**Seduction:** BEST EVIDENCE. In a prosecution for seduction it was
1 competent to ask prosecutrix, in connection with the introduction of a letter referring to the same subject, if defendant did not write her a letter in regard to breaking off their previous illicit intercourse; since the inquiry merely directed attention to the subject matter of the letter and was not an attempt to show its contents by parol.

**Same:** OPINION EVIDENCE. A prosecutrix in seduction may state

that she yielded to defendant's embraces because of his promises; as the same is a statement of the condition of mind, an issue in the case, and not therefore a mere conclusion.

**Same.** For the same reason she may state that at a certain time she determined to cease illicit relations with defendant and to lead a virtuous life. Resolution to reform, however, must be followed by conduct in harmony therewith.

**Privileged communications.** It is only the patient who can invoke the rule of secrecy regarding a communication to a physician; and where a prosecutrix for seduction has waived this right the defendant cannot object to the physician's statement of the conversation with her.

**Evidence:** NOTICE. An accused need not be advised by notice, or by reference thereto in the indictment, that papers or documents will be offered in evidence against him by the State.

**Oral proof of writing.** Where the loss of a writing has been satisfactorily shown oral evidence of its contents is permissible. Evidence held to show loss.

**Seduction:** CHASTITY OF PROSECUTRIX A FACT QUESTION. Where there is evidence tending to show that a prosecutrix had ceased illicit intercourse with defendant prior to the alleged seduction, the question of her reformation was for the jury.

**Chastity:** BURDEN OF PROOF. Where a prosecutrix in a seduction case admits her unchastity the burden is upon the State to show her reformation, prior to a subsequent alleged seduction, beyond a reasonable doubt.

*Appeal from Bremer District Court.*— HON. J. F. CLYDE, Judge.

TUESDAY, JANUARY 8, 1908.

REHEARING DENIED TUESDAY, FEBRUARY 18, 1908.

THE defendant was convicted of the crime of seduction, and appeals.— *Affirmed.*

*Sager & Sweet,* for appellant.

*Chas. W. Mullan,* Attorney General, and *Lawrence De Graff,* Assistant Attorney General for the State.

LADD, J.——The evidence tended to show that illicit relations between prosecutrix and defendant began in July, 1902, and continued until February 8, 1903, when she went to Dubuque for a visit with a sister. Prior to going they had talked several times of breaking off these relations, but had not done so. After so testifying, she was asked to state " whether or not Bennett wrote you in regard to breaking off these relations ? " The objection that this was not the best evidence was overruled, and the witness answered " He did." Thereupon a letter was identified as having been received from him and was introduced in evidence. It read: " Tripoli, Iowa, 3-16-1903. Dear Cora: I've but little to say about the subject you just wrote to me about. I know I have not done as I should and I'm heartily ashamed of myself for it. I've intended to stop but when the time comes to stop I think the next time will do as well for a ' quitter.' But I now put myself upon my honor as a gentleman to cut it out once and for all. So good afternoon. Burton B. Bennett." This plainly had reference to some course of conduct on his part, and, in view of their previous conversations, might well have been construed as relating thereto. The inquiry merely directed attention to the subject of the letter, reasonably to have been inferred from it in connection with their talks, and was competent for that purpose. *Hagen v. Ins. Co.,* 81 Iowa, 321; *McConaughy v. Wilsey,* 115 Iowa, 589; *Rosenberger v. Marsh.,* 108 Iowa, 47.

*1. SEDUCTION: best evidence.*

II.   Prosecutrix was allowed to testify, over objection, that she yielded her person to the defendant's embraces because of his promises. While the authorities seem to be in conflict on this question, the ruling is in line with the previous decisions of this court *State v. Hughes,* 106 Iowa, 125; *Hasbrouck v. Western U. T. Co.,* 107 Iowa, 160; *Kruse v. Seiffert,* 108 Iowa, 352; and has the support of *Ferguson v. State,* 71 Miss. 805 (15 South. 66, 42 Am. St. Rep. 492); *State v. Brinkhaus,* 34 Minn. 285 (25 N. W. 649); Wigmore, Evidence, section 581;

*2. SAME: opinion evidence.*

*Armstrong v. People,* 70 N. Y. 38. Such testimony is of the condition of the mind, not a mere conclusion, and when this is in issue a person having knowledge of such condition ought not to be forbidden to speak.

III. Prosecutrix also testified, over objection, that when she went to Dubuque she determined thereafter to lead a virtuous life. It is contended that this was but a conclu-

3. SAME.

sion, and, for that reason, the evidence was not admissible. But this was not a mere conclusion, but evidence of the state of prosecutrix's mind. It will scarcely be controverted that reformation must necessarily begin there. The statute is for the protection of the pure in mind — for the innocent in heart, who may have been led astray (*Andre v. State,* 5 Iowa, 389,) and reformation can only be effected by restoring the mind and heart to their state of purity and innocence. Of course, resolution to reform must be shown to have been followed by conduct in harmony therewith and, when the evidence tends to show this, whether the chaste character, once lost, has been restored is one of fact for the jury. *State v. Carron,* 18 Iowa, 372. As bearing thereon, the mental condition of prosecutrix was material, and her testimony of what it was, admissible. *O'Brien v. Railway Co.,* 89 Iowa, 644.

IV. The prosecutrix returned to Tripoli in May, 1903, and defendant returned about the 2d of June. They kept company during the summer and according to her tes-

4. PRIVILEDGED COMMUNICA-TIONS.

timony their former relations were not resumed until the latter part of October and were continued until June, 1904, when she discovered her pregnancy. In the fall of that year she attended school at Cedar Falls and with defendant arranged that she should consult Dr. Anderson. He escorted her to the entrance of the physician's office and then left with the understanding that they would meet at the hotel later. She testified that the doctor " suggested going home and seeing our home physician " to which he agreed. This preliminary statement is

essential to an understanding of the bearing of Dr. Anderson's testimony. He related that defendant called at his office and said that he had a young lady friend he would like to have him examine, and, being told to bring her up, responded that he would, that thereafter prosecutrix consulted him and later he saw defendant again when he advised him that " the young lady had better go home, that they had better get married," to which he responded: " Yes; he was willing to marry her, but his family objected." Appellant insists that all this was within the provisions of section 4608 of the Code, prohibiting physicians from disclosing any communication by their patient. Prosecutrix, and not defendant, was the patient, and she had testified to the very suggestion of the doctor as to going home, and thereby waived the privilege to this extent. Other than this the testimony was of communication with the accused, who was not the patient and in no way disclosed information received from the patient otherwise than given by herself on the witness stand.

V. Forty-two of defendant's letters to prosecutrix were admitted in evidence. These were not referred to in the minutes attached to the indictment nor notice that they would be introduced in evidence served on defendant. It is conceded that this court has repeatedly ruled that section 5373 of the Code refers to persons and not things, and, for this reason, the accused need not be advised before their offer that papers or documents will be used in evidence by the State. See *State v. Farrington,* 90 Iowa, 673; *State v. Berger* (Iowa) 90 N. W. 621; *State v. Harris,* 122 Iowa, 78; *State v. Boomer,* 103 Iowa, 106. We are not persuaded by suggestions of counsel that these decisions should be overruled.

5. EVIDENCE: notice.

VI. One Scully had called on the sister of prosecutrix occasionally and in October, 1903, asked permission to call on the latter. He was asked: " What, if anything, did you advise her about not desiring to be out in company ? " Over objection he answered: " I

6. ORAL PROOF OF WRITING.

think probably I remarked in the note that I wrote that I would prefer not to be in company on account of my father's death." Defendant moved to strike this out as not the best evidence. Thereupon the witness testified that he had given the note to prosecutrix, and she testified that she did not have it in her possession nor among her effects, that she had given it to her sister, but the latter said that it had not been received by her and had not been found after diligent search. This sufficiently established the loss of the letter to authorize oral proof of its contents. The form of Scully's answer is criticised, but this was not touched upon in the objections interposed.

VII. The question as to whether prosecutrix had reformed, and was restored in virtue in the interval between
7. SEDUCTION: chastity of prosecutrix a fact question. February 8, 1903, and October 24th or 25th of the same year was for the jury to decide. *State v. Smith,* 124 Iowa, 334, 338; *State v. Gunagy,* 84 Iowa, 177.

VIII. Complaint is made of the refusal of certain instructions. The fifth and sixth instructions were rightly refused because containing erroneous statements of the law.
8. CHASTITY: burden of proof. The burden was on the State, as the court instructed, to prove the reformation of prosecutrix, beyond reasonable doubt, and not, as said in these instructions, merely "by clear and satisfactory evidence." Having admitted her unchastity that condition is presumed to have continued until the contrary was shown, and that is the clear purport of the eighth instruction given by the court in which the jury was told that, before they could convict, " the State should satisfy you, beyond a reasonable doubt, the prosecutrix did, in fact, reform at some time after February 8, 1903." This was equivalent to a statement that the presumption of unchastity continued until overthrown by evidence as said in the instruction requested by appellant. The eleventh instruction was properly refused for attentions of other young men should not have been con-

sidered "as tending to show that defendant was not the father of her child." That was not an issue in the case. Moreover, there was nothing in her associations with other young men subsequent to February 8, 1903, which reflected on her chastity in any way.

The record is singularly free from error, and the judgment is *affirmed*.