McConnell v. The City of Osage.

## McCONNELL v. THE CITY OF OSAGE.

1. **Witnesses:** NUMBER: LIMITATION BY COURT: APPEAL: NO EXCEPTIONS. Where at the opening of the trial the court made an order limiting the number of witnesses on a material point to six on each side, and neither party then excepted to the order, *held* that they could not afterwards complain of it on appeal.

2. **Cities and Towns:** DEFECTIVE PLANK SIDEWALKS: EXPERT TESTIMONY AS TO DURABILITY. In an action against the defendant city for an injury caused by an alleged rotten sidewalk, which had been constructed and in use for twelve years, the plaintiff offered certain witnesses, whose competency is not questioned, to testify as to the length of time the kind of lumber of which the

McConnell v. The City of Osage.

walk was constructed would last. *Held* that it was error to exclude it on the ground that it was not a proper subject for expert testimony. (Compare *Ferguson v. Davis County*, 57 Iowa, 601, and *Muldowney v. Railway Co.*, 36 Iowa, 462.)

3. ——— : ——— : NOTICE OF DEFECT : EVIDENCE. In such case, plaintiff was injured by tripping on a loose board in the walk, and, with a view to show that the city knew or should have known the condition of the walk where the injury occurred, she offered to prove a defective condition of the walk the entire length of the block. *Held* that it was error to reject the testimony. (*Armstrong v. The Town of Ackley*, 71 Iowa, 76, *followed ; Ruggles v. Town of Nevada*, 63 Iowa, 185, *distinguished*.)

4. **Evidence**: REPETITION : EXCLUSION. Where a witness has already answered a proper question, it is not error to exclude it when asked a second time.

5. **Personal Injuries**: EVIDENCE : DECLARATIONS AS TO FORMER STATE OF HEALTH. Plaintiff, in an action for personal injuries, having testified as to her good physical condition as far back as 1870, *held* that statements made by her to others not earlier than 1866 or 1867, and later, were not too remote to be shown as affecting the truth of her testimony.

6. ——— : ——— : CONFIDENTIAL COMMUNICATIONS TO PHYSICIAN : WAIVER. Plaintiff in such case having testified that she had, prior to her injury, worked on the farm, and traveled and sold books and sewing machines ; that since the birth of her children her health had been good ; that she had done heavy work indoors and outdoors ; that she had been sick but little ; and that Dr. C. had been her attending physician at times, *held* that her so testifying was not a waiver of her right to object, under section 3643 of the Code, to the testimony of said Dr. C., when offered to contradict her, in which he related confidential communications made by her to him, and necessary for her proper treatment. The fact that plaintiff's testimony in such case is false does not constitute such waiver, since the court cannot assume that it is false when the forbidden communications are offered. (See opinion for review of authorities bearing upon the question.)

7. ——— : ——— : ——— : INQUIRY AS TO. Plaintiff in such case, as a witness for herself, upon cross-examination, was asked : " Are you willing that the physicians who have treated you for the last ten or fifteen years may disclose to this jury any conversation you made to them, at times they treated you, in reference to your condition?" *Held* that it was error to compel plaintiff to answer it ; it being an improper subject for inquiry, under section 3643 of the Code, and plaintiff's negative answer having a tendency to discredit her with the jury.

*Appeal from Mitchell District Court.*—Hon. J. B.
Cleland, Judge.

Filed, May 27, 1890.

Action for personal injuries sustained by falling
on a sidewalk in the defendant city. There was a judg-
ment for defendant, and the plaintiff appeals.

*F. F. Coffin, G. E. Marsh,* and *Cummins & Wright,*
for appellant.

*W. L. Eaton,* for appellee.

Granger, J.—I. The trial court limited the num-
ber of witnesses for each side to six on the question of

1. Witnesses: number: limitation by court: appeal: no exceptions.

the general condition of the walk where the
plaintiff was injured, and the appellant
complains of such action of the court. So
far as we can judge, the order was made
near the commencement of the trial, and without
objection by either party. Later plaintiff desired to
introduce additional witnesses, which the court refused.
From the state of the record, it does not appear that
the question is properly before us for review, for we
find no exceptions taken to the action of the court. If
the order was made without objection, we must assume
that the parties assented thereto; and of such action
they could not afterwards complain.

II. The testimony tends to show that the sidewalk
on which the injury occurred was in a rotted condition,

2. Cities and towns: defective plank sidewalks: expert testimony as to durability.

so that the sills would not retain the nails
by which the boards were fastened to them.
The sidewalk was built in 1872, and the
accident happened in 1884. The walk was
built by the defendant city. The law
requires it to use reasonable diligence in keeping its
walks in suitable repair. As bearing on the question
of defendant's negligence, the plaintiff offered certain

witnesses, whose competency is not questioned, to testify as to the length of time the kind of lumber of which the walk was constructed would last.  Under the objections of the defendant, it was excluded, and, as we understand, on the theory that it was not a proper subject for expert testimony.  We think the testimony should have been admitted.  As was said in *Ferguson v. Davis County*, 57 Iowa, 601, we may say in this case: "Conceding that the knowledge is such as may be acquired by observation, yet the matter is one which all persons do not have the inclination nor the opportunity to observe;" and, while the judgments of persons generally might not differ to any great extent on such a subject, we believe that persons who have not given the matter particular thought or observation would in their judgments make years of difference. Much would depend on their business, and their opportunities for such observation.  The business of many men would operate to almost entirely exclude them from such observations, and there would be nothing to particularly call their attention to the subject.  The case of *Muldowney v. Railway Co.*, 36 Iowa, 462, cited by appellee, is by no means against this view.  It is there said: "It is often very difficult to determine in regard to what particular matters and points witnesses may give testimony by way of opinion.  It is doubtful whether all the cases can be harmonized, or brought within any general rule or principle."  It seems to us quite clear that the judgment of men whose business and observations give them accurate information on the question of durability of material in bridges or walks would be of great value to a jury in properly determining such a question.  No question as to the competency of the witnesses, or the materiality of the testimony offered, is made in the case.  Our holding is that the jury in such cases may be aided by the testimony of competent witnesses.  It is doubtful if for this error alone we should have reversed the case; there being so much other evidence as to the condition of the walk.

McConnell v. The City of Osage.

III. The plaintiff was injured by tripping on a loose board in the walk; and, with a view to show that

**3. —: —: notice of defect: evidence.** the city did or should have known of the condition of the walk where the injury occurred, she offered to prove a defective condition of the walk the entire length of the block. The offer was refused. In this the court erred. The point is clearly controlled by the case of *Armstrong v. Town of Ackley*, 71 Iowa, 76. Appellee thinks the point should be controlled by *Ruggles v. Town of Nevada*, 63 Iowa, 185. The offer in this case was to prove a continuous condition of the walk from the place of injury. In the *Ruggles case* the inquiry was not as to the continuous condition of the walk, but it was as to another place, "near there" or "in that locality." The accident in that case was also caused by a loose board, and a defect at some other place near there would not be as likely to show the particular defect complained of as would the fact that the defect complained of was a part of one continuous defect; and that is a distinguishing feature of the cases.

IV. There was testimony tending to show that, because of plaintiff's injuries, her spine and nervous

**4. EVIDENCE: repetition: exclusion.** system were affected; and it was claimed that her injuries were permanent. One Dr. Russell, who had attended her, after testifying as to her condition, was asked this question: "Where there is an injury to the nervous system, in shock or strain to the spinal column, of such a character that it continues for a period of two and a half years, occasioned by a fall, what are the probabilities or chances, in your opinion, as to the recovery of a person, or not?" An objection to the question was sustained, and, on appeal, appellee does not question the admissibility of such proof; but its contention is that the doctor had before given the answer sought by the question, and, inferentially, that there could have been no prejudicial error in the ruling. In this we think appellee is correct, and we have only given the point

this notice to avoid a misapprehension on another trial.

V. Several lady witnesses were, against the objections of the plaintiff, permitted to testify as to statements made to them by plaintiff, many years before the accident, as to her health. It is urged that such statements, if made, are too remote, and hence incompetent. The plaintiff, as affecting the question of the damage she had sustained from the injury, had given testimony as to her health and ability to perform labor at least as far back as 1870, showing that she was a strong, robust woman. . In view of this fact, we think the proof of statements made by her not earlier than 1866 or 1867, and later, were not too remote to be considered as affecting the truth of her statements.

5. PERSONAL injuries: evidence: declarations as to former state of health.

VI. Dr. S. B. Chase, being a witness for the defendant, testified that he treated the plaintiff professionally in the years 1866, 1867 and 1871. In doing so, against the objections of the plaintiff, he related confidential communications made to him, and necessary for her proper treatment. Code, section 3643, provides: "No practicing attorney, counselor, physician, surgeon, minister of the gospel or priest of any denomination shall be allowed, in giving testimony, to disclose any confidential communication properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline. Such prohibition shall not apply to. the cases where the party in whose favor the same are made waives the rights conferred." The only theory upon which the action of the court is sought to be sustained is that plaintiff waived the provisions of the statute in her favor. It will be observed, from the closing sentence of the section, that the party in whose favor the prohibition is may waive it. The facts urged as constituting the waiver are as follows: The plaintiff was a witness

6. ——: ——: confidential communications to physician: waiver.

in her own behalf, and testified that she had worked on the farm, and traveled and sold books and sewing machines; that, since the birth of her children, her health had been good; that she had done heavy work indoors and outdoors; and that she had been sick but little. It may be said that her testimony, if true, showed her to be a remarkably robust and vigorous woman. She also stated that Dr. Chase had been her attending physician at times. Counsel for appellee states his proposition in support of a waiver as follows: "Having assumed to state what her physical condition had been for several years immediately preceding her injury, having assumed to narrate and describe all the ailments and disabilities that had affected her during that period, and named her attending physician, if her testimony therein was simulated and false, she could not plead the statute privilege when the defendant offered to impeach her therein by producing her said physician, Dr. Chase, or any other physician in attendance with him as assistant." It will be observed that the ground on which the waiver is based is that the plaintiff had given false testimony. It may be well to briefly inquire how such a rule would operate in practice. If the waiver is only because the testimony given is false, that fact must appear before the testimony can properly be admitted. Will the court, when such testimony is offered, assume, as a basis for its admission, that the statements made by the plaintiff are untrue? If so, it must be because the law justifies the assumption; and, if it does, why not at once declare them false, and not attempt to prove what must be assumed as a basis for the proof? If "the statute privilege" is claimed, it must be when the testimony is offered; and, if false testimony is the basis of its admission, the fact must then appear. If it appears, there is no necessity for proof to show it. The ruling must be the same as if the cause was tried to the court without a jury. It is not difficult to see that the rule could not obtain in practice. If a waiver can be claimed because

of the testimony of the plaintiff, it must be alone because the opposite party desires to contradict the plaintiff by testimony of the physician, and leave the falsity of her statements for determination by the jury.   All that can be said at the time of admission is that a party claims her statements to be false.   If at the conclusion, with the testimony admitted, her statements are found to be true as against those of the physician, what is the situation?   The testimony has been used to defeat the truth, and the statute as to prohibiting such testimony violated.   It is not enough to say that in some cases it may operate to defeat the designs of falsehood.   Such a rule would practically annul the provisions of the statute.   It could not be questioned that greater freedom as to such testimony would in some cases work good results, and in others bad.   It is a proper matter for legislative regulation; and, after considering the reasons for and against the rule, it has placed the obligation of secrecy on the lips of the physician unless it is removed by the party in whose interest it was so placed.   The statute should be looked at practically to know the legislative intent.   It does not provide for such secrecy except in cases where testimony as to such communications is necessary to contradict, or prove that the party has testified falsely, but the secrecy remains unless waived.   We think the rule, on reason, is against the position of appellee.

Let us look to the authorities, briefly.   Several cases are cited by appellee, some of which we notice. *McKinney v. Railway Co.*, 104 N. Y. 352 ; 10 N. E. Rep. 544, is one wherein the party entitled to the prohibition put the physician on the stand as a witness, and the facts were there stated.   In another trial of the same case the other party called the physician to show the same facts ; and the court held that, she herself having used the physician, and by him made public the confidential matter,—having herself "removed the seal from the lips of the witness,"—the evidence could be received.   How different the cases !   In that case the

lips of the physician were sealed in the plaintiff's interest. She removed the seal to allow him to speak. The holding was that she could not in that case replace it. In this case, Dr. Chase was allowed to speak against the objections of the plaintiff, not by her permission, unless that permission is to be implied from the fact of her giving testimony. The case cited does not go to that extent, and is not an authority for such a rule. The case of *Brown v. Insurance Co.*, 32 N. W. Rep. 610, is a Michigan case, and the holding is that, the plaintiff having stated in her application for life insurance that Dr. H. had treated her for typhoid fever, he could be allowed, against her objection, to testify whether he had so treated her or not. The court says : " The fact as to treatment or non-treatment for this disease was not, under the circumstances of this case, a matter of privilege upon which the plaintiff could insist." The same question is not in this case, nor is it an authority for our guidance. We are not holding that, if plaintiff had testified that Dr. Chase treated her for a particular disease, he might not have stated, against her objection, whether he did or not. Such a question would not necessarily have involved a " confidential communication." In *Dotton v. Village of Albion*, 57 Mich. 575 ; 24 N. W. Rep. 786, also a Michigan case, we think counsel misapprehended the import of the ruling. It seems to be in support of our view, so far as it is an authority in the case. It is a case in which one of two attending physicians was made a witness for plaintiff, and testified as to the effect of her injuries, and also as to her previous good health. The defense endeavored to show that she was before afflicted with chronic ailments, and for that purpose called other attending physicians ; but the court excluded their testimony. On appeal it was urged that the court erred in so doing, " because the plaintiff waived her privilege to have the seal of professional confidence preserved unbroken when she put her own physician on the stand to testify to her condition." To this the court said,

no; that, as to the witness she used, she doubtless did to the extent she examined him, but not as to others. The case has no reference to a waiver being implied because of false statements by the plaintiff as to conditions known to a physician. This case cites in its support that of *Campau v. North*, 39 Mich. 606, on which counsel for appellee seems to place much reliance. In that case the question of a waiver is not presented or referred to. The plaintiff claimed to have been injured by the violence of the defendant while in his employ, and she gave testimony as to her being ruptured by his violence. The trial involved an inquiry as to her condition before the injury, she having testified that she was previously in good health. On cross-examination she denied that she had admitted to her attending physician that she was ruptured before the injury. The physician being called to contradict her, his testimony was admitted. But the court does not put its rulings on the ground that she, by her testimony, had waived the provisions of the statute in her favor, but, as we understand, she had never brought herself within its provisions. The particular ground of the holding is: "It does not appear in the record, from the doctor's testimony or in any way, that, in case she made the admission as to the pre-existence of the rupture, and as to its being caused by the plaintiff in error, it was information necessary to enable the doctor to prescribe for her as a physician, or to do any act for her as a surgeon. And yet this is one of the fundamental conditions for exclusion which the statute specifies." It is not urged in this case but that the plaintiff, under the facts, was entitled to protection unless she had waived it; and the case does not hold that the giving of false testimony, which it might be desirable to contradict, would constitute a waiver. We need not notice other errors of the same character.

VII. While plaintiff was on the witness stand, and being cross-examined, she was asked this question:

McConnell v. The City of Osage.

7. —: —: inquiry as to. "*Q.* Are you willing that the physicians who have treated you for past ten or fifteen years may disclose to this jury any conversation you made to them, at times they treated you, in reference to your condition?" Objections to the question being overruled, the plaintiff answered that she was not. The ruling is assigned as error, and we think it was manifestly so. Counsel for appellee does not in argument attempt to vindicate the ruling, and it would seem that an attempt must result in failure. The statute gives the prohibition. It is a legal right, and a party should no more be required to state under oath that he did not want to surrender it than any other legal right he possessed. We think a fair trial requires that such a matter should not even be referred to; that a jury should not be impressed with a belief that there is even reluctance to giving such assent. The subject-matter of such a waiver has no place for reference in the taking of testimony except by the party permitted to make it. That prejudice resulted from the ruling in question is more than probable. After making oath that she would not consent to the testimony, the jury was left to assume something,—we know not what. It would naturally believe that, if assent had been given, testimony unfavorable to the plaintiff would have been the result. However, we need not speculate as to the probable consequences. It was clearly error.

VIII. Some errors are assigned as to instructions which we think it unnecessary to consider, as the same objections will not likely arise on another trial. We call attention to the definition of the word "negligence" in the fifth instruction, with the suggestion that its correctness is seriously questioned, and may be doubted.

Because of the errors pointed out in this opinion, the judgment of the district court is

REVERSED.