## PENNSYLVANIA R. CO. v. DURKEE.

(Circuit Court of Appeals, Second Circuit. June 7, 1906. On Rehearing, July 6, 1906.)

### No. 273.

EVIDENCE—PRIVILEGED COMMUNICATIONS—INFERENCE FROM REFUSAL TO WAIVE STATUTORY PROHIBITION.

Code Civ. Proc. N. Y. §§ 834, 836, which provide that a physician "shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity," unless such provision is expressly waived by the patient on the trial or by stipulation of counsel, enacts a rule of public policy as well as of private right, which can only be abrogated by an express waiver in the manner provided, and no inference may be drawn by a jury adverse to the cause of a patient because of his failure or refusal to make such waiver.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 97.]

In Error to the Circuit Court of the United States for the Eastern District of New York.

This cause comes here upon writ of error to review a judgment entered upon a verdict in favor of defendant in error, who was plaintiff below. The action was to recover damages for personal injuries sustained in consequence of a collision between two trains; the plaintiff being at the time a passenger upon one of them.

Henry G. Ward, for plaintiff in error.

A. G. Schuerman, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. There are only two assignments of error; one to a refusal to charge a request, the other to instructions given to the jury upon refusing to charge as requested. The request was:

"That the jury have a right to infer, from the refusal of the plaintiff to permit Dr. Peterson to testify as to what he treated [plaintiff] for and what he found her condition to be, that his testimony would be unfavorable to her."

In refusing it the court said:

"I charge, on the other hand, that it is her privilege and her right, awarded to her by the law, to object to her physician giving any evidence, and

that you are not permitted to infer, because she exercised that right, that the physician would have given evidence in one way or the other, favorable or unfavorable. Simply, the law boldly and wholly shuts it out, except at her instigation; but that she was treated by Dr. Peterson appears according to his statement, and you have a right to consider that fact, and only that, as far as his evidence is concerned."

The accident happened February 21, 1901, and it was alleged that as a result plaintiff received a severe concussion of the spine, severe injuries to the head and nerves of the head and nervous system, and to the nerves of the body and limbs, and a shriveling and wasting of the left arm and hand resulting therefrom. It is quite apparent that it might be desirable for the defendant to show, if it could, that she had suffered from some of these nervous injuries before the accident. Upon the trial a witness, Dr. Peterson, was called by the defendant. After qualifying as a specialist in nervous and mental diseases, he testified that the plaintiff was sent to consult him by another physician, and that he saw her professionally four times between October 31, 1895, and March 1, 1898. He was then asked "for what trouble the plaintiff consulted him, and what he found to be her physical condition." This was objected to as "incompetent, as a privileged communication, and against the statute." The objection was sustained.

The sections of the New York Code of Civil Procedure which regulate the subject are as follows:

"Sec. 834. A person duly authorized to practice physic or surgery, or a professional or registered nurse, shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity; unless, where the patient is a child under the age of sixteen, the information so acquired indicates that the patient has been the victim or subject of a crime, in which case the physician or nurse may be required to testify fully in relation thereto upon any examination, trial or other proceeding in which the commission of such crime is a subject of inquiry."

Section 833 contains similar provisions as to clergymen, and section 835 as to attorneys and counselors.

"Sec. 836. The last three sections apply to any examination of a person as a witness unless the provisions thereof are expressly waived upon the trial or examination by the party confessing, the patient or the client. * * * The waivers herein provided for must be made in open court, on the trial of the action, or proceeding, and a paper executed by a party prior to the trial, providing for such waiver shall be insufficient as such waiver. But the attorneys for the respective parties, may prior to the trial, stipulate for such waiver, and the same shall be deemed sufficient therefor."

In the brief of defendant in error it is asserted that the privilege accorded to the patient under section 834 may be waived by failure to object, and cannot be rendered effectual except by the interposition of an objection. No cases are cited in support of this proposition, and in the absence of any controlling decision we would be inclined to hold the converse. Section 834 in explicit and peremptory language forbids the physician from disclosing any information obtained in a professional capacity, and it is not apparent why such prohibition should not bind him, whether the defendant sits silent or raises an objection. Until the express waiver in open court, which section 836 provides for, it is the duty of the witness to refuse to betray the confidence reposed

in him as a professional man, and the trial judge would no doubt of his own motion prevent any disclosures which the statute forbids. Had it been the intention of the Legislature that the prohibition of the statute should be operative only when the patient took affirmative action to exclude the testimony by interposing an objection, presumably it would have used language appropriate to indicate such an intention. On the contrary, it has placed the prohibition on the statute book, to be lifted only upon the taking of express affirmative action by the patient to obtain a disclosure by the physician. The situation is very different from that arising when a party to a civil action, who apparently must be cognizant of the facts of some controverted issue, avoids cross-examination by not going on the witness stand, or persuades some witness to remain out of reach of a subpœna, or destroys documentary evidence. The prohibition against disclosure of professional secrets is manifestly an exercise of public policy. It secures a right to every individual which he is under no obligation to waive or abandon. "The statements of an attending physician are excluded, not only for the purpose of protecting parties from the disclosure of information imparted in the confidence that must necessarily exist between physician and patient, but on grounds of public policy as well. The disclosure by a physician, whether voluntary or involuntary, of the secrets acquired by him while attending upon a patient in his professional capacity, naturally shocks our sense of decency and propriety, and this is one reason why the law forbids it." Davis v. Supreme Lodge, 165 N. Y. 159, 58 N. E. 891.

To hold that, because the patient does not waive or abandon the prohibition, inferences adverse to his side of the controversy may be drawn by the jury, would be to fritter away the protection it was intended to afford. When it is the legal right of a party not to have some specific piece of testimony marshaled against him, he may exercise that right without making it the subject of comment for the jury. The law of evidence provides that the copy of a document shall not be proved until the failure to produce the original shall be satisfactorily explained. When a copy is offered, the party against whom it is offered may, if he choose, waive this particular objection; but, if he does not, are the jury to be allowed to draw unfavorable inferences from his insisting upon the cause being tried in the orderly way in which the law provides? In a case where communications between client and counsel were inquired about, Lord Chelmsford said:

"The exclusion of such evidence is for the general interest of the community, and therefore to say that, when a party refuses to permit professional confidence to be broken, everything must be taken most strongly against him, what is it but to deny him the protection which for public purposes the law affords him, and utterly to take away a privilege which can thus only be asserted to his prejudice?" Wentworth v. Lloyd, 10 House of Lords, 589.

To a similar effect are Nat. Ger. Am. Bank v. Lawrence, 77 Minn. 282, 79 N. W. 1016, 80 N. W. 363; Lane v. Spokane Falls R. Co., 21 Wash. 119, 59 Pac. 367, 46 L. R. A. 153, 75 Am. St. Rep. 821; McConnell v. City of Osage, 80 Iowa, 293, 45 N. W. 550, 8 L. R. A. 778.

Plaintiff in error cites two decisions in which it is held that when the defendant in a criminal trial—who, under the statute, may, if he pleases, call his wife as a witness, but against whom his wife could not be compelled to testify—fails to call his wife, the jury may infer that her testimony would have been unfavorable to him. Commonwealth v. Weber, 167 Penn. 153, 31 Atl. 481, and People v. Hovey, 92 N. Y. 554. In neither of these is there any discussion of the question or any reference to authority. In the New York case the decision is obiter, because the point was raised upon exception to the charge, which exception was taken only after the trial had terminated; the jury having brought in their verdict. The court held that such exception "did not present any question of law for the consideration of an appellate court." The precise question as to privilege in the case of a husband or wife charged with crime was considered in the following cases. In each of them the question was discussed and authorities cited. The conclusion reached was that the rule as to drawing unfavorable inferences from the failure of a party to produce evidence "is not to be applied to those cases where the law, on grounds of public policy, has established privileges against being compelled to produce it," and also that, "if the failure to produce the testimony is to be construed as a circumstance against the party, his privilege would be annulled and entirely destroyed." Johnson v. State, 63 Miss. 316; Newcomb v. State, 37 Miss. 383; Knowles v. People, 15 Mich. 408.

The Appellate Division of the Supreme Court of New York for the First Department has apparently reached a different conclusion in Deutschmann v. Third Ave. R. R., 87 App. Div. 503, 84 N. Y. Supp. 887. That case seems not to be in accord with the general consensus of judicial opinion, and, since the question is not one of interpretation of a state statute, but deals only with the general law of evidence, there is no reason apparent why this court should follow it.

The judgment is affirmed.

### Petition for Rehearing.

PER CURIAM. Authorities now cited which were not on the original briefs indicate that in the state courts the privileged testimony is admitted unless objection is interposed. That circumstance, however, does not modify the conclusion expressed in our opinion disposing of the cause, namely, that the trial judge correctly instructed the jury because the rule as to drawing unfavorable inferences from failure to produce testimony is not to be applied where the law, on grounds of public policy, has established privileges against being compelled to produce it.

The petition for rehearing is denied.