LAURA ARNOLD, Appellant, v. EUPHEMIA M. LIVINGSTONE
    and RODERICK G. LIVINGSTONE, individually and as ad-
    ministrators of the Estate of SARAH J. LIVINGSTONE,
    deceased, Appellees.

**Wills:** MENTAL CAPACITY: FRAUD: UNDUE INFLUENCE: EVIDENCE. In
this action to set aside a will on the ground of mental incapacity,
fraud and undue influence, the evidence is held insufficient to
warrant submission of the issues to the jury.

**Appeal:** EXCLUSION OF EVIDENCE: REVERSAL. A cause will not be
reversed because the court sustained objections to interrogatories,
where the record in no manner disclosed what the nature of the
answers would have been.

**Examination of witnesses.** The court may properly refuse to per-
mit counsel to state in the presence of the jury what he expects
to prove by a witness; as he can advise the court by an exam-
ination of the witness in the absence of the jury, or by a written
statement of the proposed evidence, and thus enable the court
to determine its admissibility without prejudice to the other
party.

*Appeal from Jones District Court.*—HON. F. O. ELLISON,
                            Judge.

TUESDAY, JANUARY. 16, 1912.

THIS is an action to set aside the will of Sarah J.
Livingstone and the former probate thereof. At the close
of plaintiff's evidence, the trial court directed the jury to
return a verdict for the defendants, which was accordingly
done. From a judgment dismissing the petition, the
plaintiff has appealed.—*Affirmed.*

*Herrick, Cash & Rhinehart* for appellant.

*E. E. Reed, J. W. Doxsee,* and *E. C. Perkins,* for appellees.

EVANS, J.—Sarah J. Livingstone died on March 12, 1909. Her purported will was admitted to probate by the district court of Jones county on April 17, 1909. Subsequently this action was instituted; the plaintiff being one of the daughters of deceased.

The grounds of invalidity charged in the petition against the purported will were: (1) That the testatrix lacked mental capacity to make same; and (2) that the execution of the will was procured by the fraud and undue influence of the beneficiaries therein, and others. At the close of the plaintiff's evidence, the trial court held that there was not sufficient testimony to warrant the submission of either alleged ground to the jury.

On the question of mental capacity, the testimony was clearly insufficient. The will was executed November 28, 1909. The testatrix was nearly eighty years of age.

1. WILLS: mental capacity: fraud: undue influence: evidence.

The testatrix had never learned to write beyond making her own signature. Of late years she had not been able to do that much. She was intelligent, however, and attended to her own business affairs, which were few. Her mental capacity appears to have been normal, and her physical activity was rather marked for her years. Her death later resulted from pneumonia. The record discloses no testimony tending to show mental incapacity. No one testified to any irrational act on her part, nor did any witness venture an opinion that she was not of normal mental capacity. It was shown that on two occasions shortly after moving to Monticello from a farm, two or three years before her death, she asked assistance to locate the street on which her house was situated, and that she was in some confusion as to its location. Some reliance is placed upon this fact, but we are able to see very little, if anything in it. We

think it must be said, also, that the evidence was clearly insufficient to warrant a submission to the jury on the ground of undue influence.

The will gave all the property to the two youngest children, a son and a daughter, known in this record as Rodney and Phemy. There were seven or eight other sons and daughters who received nothing. Perhaps it should be said that the will was presumptively inequitable, and that its inequality was a proper circumstance to be considered. The two beneficiaries were unmarried, and had always lived at home with the father and mother, and this for many years after they arrived at majority. The other children had all married and had homes of their own. The father had died in August, 1907. It appears from the record that the mother was not satisfied with the will left by him, but the provisions of his will are not made to appear, nor her grounds of objection thereto. It appears that the property left by him consisted of the one hundred and sixty acre farm, the former home of the family, in Delaware county, and the little home in Monticello worth $1,400. At the time the will involved in this controversy was made, the property of the testatrix consisted of her interest in her husband's estate and in the estate of her deceased son, who had died in another state since the death of her husband. This latter estate amounted to about $10,000, and was inherited by the testatrix as her son's sole heir. The testatrix loved all her children with an equal affection, and they visited her often. The financial circumstances of the other children are not made to appear. There is no evidence of the immediate circumstances attending the making of the will, except that it appears to have been made by a lawyer and left with him. There is some testimony tending to show that the beneficiaries of the will knew of its existence, and that the other children did not. There is also evidence that on one or two occasions the testatrix had complained of certain conduct of her

son Rodney. There is also evidence that he lacked in industry and efficiency, and that he was not attentive to his mother. The great volume of the testimony, however, is devoted to alleged conversations had between the beneficiaries, or one of them, and other members of the family. These conversations have been put in evidence on the theory that they contained implied admissions of improper conduct on the part of the beneficiaries. Practically all these alleged conversations were had after the date of the execution of the will, and most of them after the death of the testatrix. We do not think that a jury would be warranted in drawing from these conversations the many inferences which are suggested in appellant's argument. We can not enter upon a detailed discussion of them without extending this opinion unduly. These conversations show a state of unfriendly feeling as between the beneficiaries and some of the brothers and sisters, and that it had its origin prior to the death of the mother. If there is anything to be found in these conversations as tending to prove undue influence, it is very slight indeed. We think, therefore, that the trial court was right at this point.

III. Considerable testimony offered by the plaintiff on the trial was ruled out upon objection of the defendants. Many of the assignments of error which are presented to us are predicated on such adverse rulings.

*2. APPEAL: exclusion of evidence: reversal.*

The following examination of the plaintiff as a witness is sufficiently illustrative of the record in this respect:

Now, at any time when he (Roderick) was up there, did you have any conversation with him as to what his mother had done, or how things had been fixed? If so, state what was said and when and what the conversation was. (The defendants object to the question as calling for immaterial, irrelevant, and incompetent testimony as to undue influence.) The court: Was that before or after the will was made? Mr. Herrick: After the will was made. The Witness: I think it was along about that time.

1. Q. Can you tell whether before or after about that time? A. Yes; about that time. The Court: Objection sustained, and plaintiff excepts. Mr. Herrick: We expect to prove by this witness that at this time—(Defendants object to the counsel making statement of what he expects to prove at this time or any other time, and object to his making a statement before the jury.) Mr. Herrick: We expect to prove by this witness— The court: They object to your making a statement of what you expect to prove, and this brings it up for me to rule on. (Objection sustained and plaintiff excepts.)

2. Q. Now at that time state whether or not your brother Roderick said anything to you as to what he and Phemy had done with reference to your mother's disposition of her property or making a will. (Defendants make the same objection as to the preceding question, and as incompetent, irrelevant, and seeking to introduce in evidence the statements of a legatee under the will to the prejudice of another legatee that was not present. (Objection sustained, and plaintiff excepts.)

3. Q. At that time state whether your brother Roderick said anything to you as to what he and Phemy had done with reference to your mother's disposition of her property or making a will? (Defendants make the same objection as last above. Same ruling and plaintiff excepts.) My husband and I were present at that time. It was at our home in Hopkinton.

4. Q. Afterwards, at your mother's home here in Monticello, do you remember a conversation with Phemy with reference to what had been done with reference to your mother's disposition of her property? (Defendants make the objection to the question as calling for incompetent and irrelevant testimony, and as an effort to introduce the statements of a legatee to the prejudice of other legatees in the will. Objection overruled, and plaintiff excepts.) A. Never had a conversation with Phemy; never asked a word about mother's will, what she was going to do with the property. (Question repeated by the reporter.) A. I do not know as I clearly understand what you mean.

5. Q. Did you afterward hear a conversation between your sister Phemy and your sister Alice at Monticello at the time Alice was there at the funeral? A. Yes.

6. Q. As to what had been done, what she had done or caused to be done with reference to your mother's disposition of the property? (Defendants object to the question as calling for immaterial, irrelevant, and incompetent testimony, and because it is an effort to introduce the statements of a legatee under the will to the prejudice of other legatees under the same will.) The Court: As to the objection as to the other legatees, the objection is sustained, and plaintiff excepts. Mr. Herrick, Counsel for Contestant: I want to make a statement. We expect to prove that the statement made by Phemy at the time mentioned— (Defendants make the same objection as to the last offer of counsel. Overruled, and plaintiff excepts.) Counsel for plaintiff now states that he expects to show at this time referred to in the question as to what had been said by Phemy that she made in substance the same statement. . . . (Defendants make the same objection as last above. Objection sustained, and plaintiff excepts.) Counsel for plaintiff submits in writing what he expects to prove, which writing is as follows: 'Counsel for plaintiff state that they expect to prove by the witness that the statements made by Phemy and Roderick concerning the matter inquired about were the same in such instance.' (Objection sustained, and plaintiff excepts.)

For convenience of reference we have numbered the foregoing interrogatories.

It is urged by appellant that the questions above set out were proper, and that the trial court should have permitted them to be answered. If this contention were conceded, it would avail appellant little on this appeal. There is nothing in any of the questions which brings before us the particular matter attempted to be proved. The proposed evidence might have been admissible, and yet be insufficient to cure the deficiency of plaintiff's case. We have repeatedly held that we will not reverse a case upon such rulings as are here shown, unless it be made to appear in some manner what the answer of the witness would have been. *Porter v. Moles,* 151 Iowa, 279; *Kuhn v. Gustavson,* 73 Iowa, 633; *In re Trotter's Will,* 117

Iowa, 417. If we were to reverse this case upon this ground and remand it for the purpose of permitting these questions to be answered, the answers might prove to be wholly negative. This is illustrated in this record by the interrogatory which we have numbered five, and the answer thereto. The trial court permitted an answer to that question which proved to be a pure negation. If the trial court had sustained an objection to such question, and if we were to reverse upon such ruling, such reversal would be based upon an imaginary error and not a real one. The reversal would be rendered farcical by a subsequent negative answer. And it would be none the less so though the answer were affirmative if such answer or answers could not change the final result. It was therefore incumbent upon the plaintiff to make it appear in some proper way what the proposed testimony was or would be.

This could be done with the permission of the court in various ways. The court could have permitted a statement of the proposed evidence to be made into the record. It was, however, entirely proper that the court should refuse to permit such statement to be made in the presence of the jury. The witness might have been examined briefly in the absence of the jury for the purpose of enabling the court to rule. A statement of the proposed evidence in writing is not unusual. It will be noted that plaintiff's counsel undertook to state at various times what he expected to prove by the witness. Objection was made to his making such statement in the presence of the jury, and this objection was sustained. Such ruling was clearly within the discretion of the trial court. Counsel thereupon reduced his statement to writing, and incorporated the same in the record as above set forth. It will be noted that there is nothing in such written statement that throws any light upon the question what the proposed testimony of the witness was to be. All we learn from such writings is that both "Rodney and Phemy made

<small>3. EXAMINATION OF WITNESSES.</small>

the same statement." What was the statement? This question finds no answer in the record. The appellant is therefore in no position to ask a reversal upon these assignments. We have, therefore, no occasion to consider the sufficiency of the ground of objection by appellees. We may say, also, that questions six and seven were later answered in another connection and the answers elicited appear of very doubtful materiality. On the whole, the trial court gave to the plaintiff a wide range of examination. We find no error in the record prejudicial to the plaintiff. The one question in the case is the sufficiency of the evidence. It is not sufficient.

The order of the trial court must therefore be *affirmed*.