VIOLA JACOBS, Appellee, v. CITY OF CEDAR RAPIDS, Appellant.

**WITNESSES:**   Competency—Privileged   Communications —Waiver.
1   A party who testifies, even on cross-examination, *that he had never consulted any doctor prior to his injury in question,* thereby asserts· that no doctor exists against whom·he might lodge the objection of incompetency to disclose privileged

and professional communications occurring prior to such injury. In other words, such testified declaration opens wide the door to any physician to testify fully to any professional treatment furnished by said physician to said party, prior to said injury in question.

**EVIDENCE:** Weight and Sufficiency—Conclusiveness on Party
2   Offering—Right to Deny Truthfulness. A party to an action may not, for his own advantage, say that his *own* testimony is false and the testimony of another is true.

PRINCIPLE APPLIED: Plaintiff sought to recover damages for a fall upon a negligently kept sidewalk. She testified, on cross-examination, as follows: "I did not consult any doctors in regard to my health before my accident." Defendant then called a physician who testified that he had been professionally consulted by plaintiff prior to said accident. To exclude the testimony of this witness as to said consultation, on the ground that he was incompetent to disclose privileged communications, required plaintiff to declare, in effect, that what said physician said about having been consulted was *true*, and what plaintiff had said on the same subject was *false*. *Held*, plaintiff had no right to so assert.

**APPEAL AND ERROR:** Harmless Error — Prejudice — Burden —
3, 6  Non-sufficient Record on Excluded Question. On the erroneous exclusion of a question, counsel must see to it that the record shows just what he has lost by the erroneous ruling. In other words, the record must substantially show what relevant or material answer the witness would have given had he been permitted to answer. Phrased differently, the court will not *imagine* the testimony that would have been given and therefrom *presume* prejudice.

PRINCIPLE APPLIED: Plaintiff claimed to have received a certain injury from a fall. Defendant claimed that plaintiff had this injury prior to her fall. Defendant called a physician who had treated plaintiff *prior* to the accident, and asked him *"to state the ailment for which he then treated plaintiff."* The answer was erroneously excluded on the ground of privilege, because plaintiff had, by her testimony, waived her right to so object. As to another consultation, a physician was asked: "What was the matter with her?" and "whether there was any difference in the ailment of plaintiff when he visited her *after* the fall and when he visited her *prior* to the fall." No offer was made as to *what* answers the witness was able to make, *what* answers he would have made, or *what* answers the

offering party expected the witness to make.  *Held*, no reversible error was made to appear.

APPEAL AND ERROR:   Briefs — Points and Arguments — Points
4  Noticed Sua Sponte.   The appellate court will, on its own motion, raise the point that no reversible error results from the erroneous exclusion of a question, when the record does not show *what* appellant lost by the erroneous exclusion.

WITNESSES:   Competency—Professional Communications—Waiver.
5  A party who, following a particular injury, is in turn treated, professionally and separately, by two physicians, may call one of said physicians and prove by him what he discovered concerning said party's physical condition, *without in any manner removing the ban of secrecy on the other physician.*

APPEAL AND ERROR:   Harmless Error — Prejudice — Burden —
3, 6 Non-sufficient Record on Excluded Question.

APPEAL AND ERROR:   Harmless Error — Prejudice — Burden —
7  Sufficiency of Record on Excluded Question.  A defendant who calls plaintiff's physician as a witness and seeks to show what said witness discovered while professionally treating plaintiff, and is denied the right to so show, must, on appeal, in order to establish reversible error, demonstrate two facts, to wit:  (1) That plaintiff had in some manner waived the right to object to the divulging of said professional communications; and (2) that said witness, had he been permitted to answer, would have given a material or relevant answer.

*Appeal from Cedar Rapids Superior Court.*—C. B. ROBBINS, Judge.

THURSDAY, OCTOBER 25, 1917.

PLAINTIFF claims to have been injured by a fall upon a sidewalk, caused by alleged negligence of defendant in allowing snow and ice to remain on the walk.  She has judgment upon verdict.  The appeal presents whether testimony of a physician offered by defendant was rightly excluded for being privileged under the statute.—*Affirmed.*

*F. F. Dawley* and *C. F. Luberger,* for appellant.

*Rickel & Dennis* and *E. A. Johnson,* for appellee.

SALINGER, J.—I. The sole point urged

**1. WITNESSES: competency: privileged communications: waiver.**

for reversal is sustaining objection to the testimony of a physician on the ground that it was incompetent, for being a breach of privilege. The argument is, in effect, that the necessary relation did not exist, or, if it did, that testimony given by the objecting party and her witnesses waived the privilege. Plaintiff testified that, before her injury, she was in good health and able to do all kinds of work. A medical witness for her said that, after the injury, he found an infection which must have existed before the injury; that it might or might not have ultimately required operation upon plaintiff if she had not suffered the injury she complains of; but that said injury aggravated the infection and precipitated the operation. Thereupon, a doctor witness for defendant testified that he had in the past attended upon the plaintiff as her physician on several occasions, and on each had given her medical treatment. The first contention is that, as against the objection that same was privileged, he should have been allowed to say for what he gave her such treatment. If it were not for one thing, presently to be discussed, the case of *McConnell v. City of Osage*, 80 Iowa 293, at 298 to 301, is squarely against this claim made by appellant. There the testimony of plaintiff was substantially what it is here, and we held that its giving did not waive the privilege. But the *McConnell* case may not be applied without noting a distinction which is created by the fact that plaintiff here testifies, "I did not consult any doctors in regard to my health before my

**2. EVIDENCE: weight and sufficiency: conclusiveness on party offering: right to deny truthfulness.**

accident." Had this been said in her examination in chief, we should be constrained to hold that the relation which creates the privilege did not exist, and this though the doctor testifies it did exist. While a party

is at liberty to show by one witness what is opposed to the testimony given by another, this will not permit such party for his own advantage to say that the testimony given by himself shall be treated as false and that of an opposing witness as true (*Stearns v. Chicago, R. I. & P. R. Co.*, 166 Iowa 566) ; but she said this on cross-examination, and we inquire whether that fact obviates the effect of the statement that plaintiff had no relations with any doctor.  So far as testimony on cross-examination reveals the state of plaintiff's health, its giving does not waive privilege.  *Burgess v. Sims Drug Co.*, 114 Iowa 275, at 279 to 281; *McConnell v. City of Osage*, 80 Iowa 293.  And see *Lauer v. Banning*, 140 Iowa 319, at 328.  But that does not meet the situation here.  We are of opinion that, when plaintiff testified, though on cross-examination, that no relation existed upon which the claim of privilege could rest, she settled, at least for that trial, that her objection was not well taken.

1-a

3. APPEAL AND ERROR : harmless error : prejudice : burden : nonsufficient record on excluded question.

But does the exclusion constitute reversible error?  There was no statement of what it was believed or expected would be said if the witness were permitted to answer.  We may assume it·was the expectation of defendant to elicit something within the range of the paper issue which, *in its opinion,* would tend to show that whatsoever plaintiff had suffered was not caused by an act or omission for which defendant was answerable.  If the record advised what was expected, we might agree with the opinion we have assumed appellant to entertain.  As matters stand, we cannot find that appellant was prejudiced, unless we assume that, if permitted to answer, the witness would have said he treated plaintiff for something the existence of which tends to show that the fall of plaintiff did not cause the injuries of which she complains.  He might have done so, or he might

have said he did not remember, or said that the treatment was for diphtheria. He might have made answer not open to the objection made, and he might not. *State v. Row,* 81 Iowa 138. It is said in *Mosier v. Vincent,* 34 Iowa 478, "They may have severally answered that they had no opinion," or that they did not remember, were not able to answer; the answer might have been unfavorable to the interrogator. Wherefore, as error is presumed against, and prejudice must be shown (*Mosier v. Vincent,* 34 Iowa 478, *Bradley v. Kavanagh,* 12 Iowa 273, *Iowa & Minn. R. Co. v. Perkins,* 28 Iowa 281, *Lawson v. Campbell,* 4 G. Greene 413, *Jenks v. Knott's M. S. M. Co.,* 58 Iowa 549, at 552, *Shellito v. Sampson,* 61 Iowa 40, 41), it must be made to appear that the witness was able to answer, and that what was proposed to be elicited was material and of benefit to the appellant. *Paddleford v. Cook,* 74 Iowa 433, 435; *Arnold v. Livingstone,* 155 Iowa 601, 604; *Willey v. Hall,* 8 Iowa 62, at 64; *Klaman v. Malvin,* 61 Iowa 752; *Mays v. Deaver,* 1 Iowa 216, 225; *Speers v. Fortner,* 6 Iowa 553; *Bradley v. Kavanagh,* 12 Iowa 273. Even where it is a party who is being questioned, it will not be presumed he would give testimony beneficial to him if allowed to testify. *Barr v. City of Omaha,* (Neb.) 60 N. W. 591, 592; *Masters v. Marsh,* (Neb.) 27 N. W. 438; *Klaman v. Malvin,* 61 Iowa 752; *Kelleher v. City of Keokuk,* 60 Iowa 473; *Arnold v. Livingstone,* 155 Iowa 601; *Porter v. Moles,* 151 Iowa 279; *Yates v. Kinney,* (Neb.) 41 N. W. 128, 129. On this head, support from authority is not needed. It would be a judicial scandal to promulgate as a judicial declaration that a witness is under a species of implied contract to furnish a memory adequate to the needs of the party calling him, and to answer questions only in such way as will benefit that party. The only presumption that may be indulged in is that the witness will tell the truth as he understands it.

Where the question is answered, the answer or its effect must appear in the record. *Mosier v. Vincent,* 34 Iowa 478; *Bradley v. Kavanagh,* 12 Iowa 273; *Jenks v. Knott's M. S. M. Co.,* 58 Iowa 549, at 552; *Lawson v. Campbell,* 4 G. Greene 413; *Thurston v. Cavenor,* 8 Iowa 155. If answer is not made, and nothing discloses what was excluded, we must presume the court ruled correctly in excluding it. *Iowa & Minn. R. Co. v. Perkins,* 28 Iowa 281; *Emerick v. Sloan,* 18 Iowa 139; *Hanan v. Hale,* 7 Iowa 153.

Even if an *answered* question is complained of, if the answer is not shown, it will be presumed that all improper questions were so answered as that the question did no harm (*Thurston v. Cavenor,* 8 Iowa 155), and that a witness who might be incompetent answered only as he might competently speak (*Lawson v. Campbell,* 4 G. Greene 413). It would follow that, when no answer is made, it should not be assumed that if made it would be of such character as to make its exclusion prejudicial error. In the words of *Shellito's* case, 61 Iowa 40, 41, we should not "imagine the testimony that would have been given, and thus presume prejudice." We say, in *Arnold's* case, 155 Iowa 601, at 607:

"If we were to reverse this case upon this ground and remand it for the purpose of permitting these questions to be answered, the answers might prove to be wholly negative." This is illustrated in this record by the fact that one question which was allowed to be answered proved to be a pure negation. "If the trial court had sustained an objection to such question, and if we were to reverse upon such ruling, such reversal would be based upon an imaginary error and not a real one. The reversal would be rendered farcical by a subsequent negative answer. And it would be none the less so though the answer were affirmative, if such answer * * * could not change the final result."

And say in the same case that "We have repeatedly held that we will not reverse a case * * * unless it be made

to appear in some manner what the answer of the witness would have been." (606)  It is incumbent on appellant "to make it appear in some proper way what the proposed testimony was or would be." (607)

To obtain a reversal on the ground that excluded testimony would have tended to establish some particular fact, it is necessary that the trial court should have been advised that the testimony excluded by it would so tend. *Gustafson v. Rustemeyer*, (Conn.) 39 Atl. 104; *Maxwell Land-Grant Co. v. Dawson*, (N. M.) 34 Pac. 191; *Fearey v. O'Neill*, (Mo.) 50 S. W. 918.  There must be a statement which tells the trial court, "clearly and explicitly, what the evidence was which he offered and expected to elicit by the answer of the witness to the question propounded." *Whitehead v. Mathaway*, 85 Ind. 85, at 86.  And see *Votaw & Hartshorn v. Diehl*, 62 Iowa 676, 678.

The most we may do is to assume defendant expected an answer within range of the issue to which the question was advised, i. e., *something* that dealt with the health of plaintiff before she was injured.  In situations which did more than this as to suggesting the answer sought, it has been held fatal that no profert or statement was made.  In *Porter's* case, 151 Iowa 279, 280, a suit on an oral guarantee, a witness was not allowed to say what passed between him and defendant respecting future liability on the note.  *Jordan v. D'Heur*, 71 Ind. 199, 200, involves the extension of a promissory note, and objection was sustained to a question whether consent was given at the time a written consent bears date.  In *Shellito's* case, 61 Iowa 40, 41, the question was whether witness had not at a stated time talked with a named witness and then said that plaintiff had consented to the cancellation of the contract with defendant.  In *Klaman's* case, 61 Iowa 752, the defendant was bound to suffer judgment if other signatures on a note signed by him were genuine, and made the defense that they were forgeries.

He was not allowed to say whether he heard the others impleaded say their signatures were put on by authority. In *Sellars v. Foster*, (Neb.) 42 N. W. 907, 909, a witness whose testimony that one Houston's reputation for truth was bad had been stricken out, was afterwards asked and not allowed to answer a question proper in form as to that reputation. In *Cutler v. Skeels*, (Vt.) 37 Atl. 228, 230, a witness was not allowed to answer whether he did not know better than to approach a judge and try to influence him. In *Masters v. Marsh*, (Neb.) 27 N. W. 438, a bastardy suit, testimony that complainant was seen going with someone other than defendant into a house in the nighttime, was excluded. In *Yates v. Kinney*, (Neb.) 41 N. W. 128, 129, counsel for defendant in a malicious prosecution was not allowed to say whether his client acted on advice of counsel. In *Gronan v. Kukkuck*, 59 Iowa 18, 20, a suit for damages for assault, the question was whether it was in any way understood by the witness and his father that plaintiff should be assaulted. In *Mordhorst v. Nebraska Tel. Co.*, (Neb.) 44 N. W. 469, 470, there was an attempt to recover for telephone instrument rental, and a defense that the instrument put in was worthless. The question disallowed was what kind of an instrument it was, as to being good or poor. And in *Kelleher v. City of Keokuk*, 60 Iowa 473, 475, a suit for injury from a defective sidewalk, a carpenter who had built it, and who had shown he knew how long stringers put there would remain in condition to hold nails, was not allowed to answer at what time those very stringers would become rotten and incapable of holding nails. In *Greenough, Cook & Co. v. Shelden*, 9 Iowa 503, 506, a written memorandum excluded may much more readily be presumed to have contained matter beneficial to the one desiring its introduction than we can presume here the witness would have stated. In *Perkins'* case, 28 Iowa 281, 284, it was much more clear that

an answer was sought as to who had affixed a stamp than it can possibly be what answer would have been made to the interrogatories involved on this appeal. And see *Votaw's* case, 62 Iowa 676, 680; *Kuhn v. Gustafson,* 73 Iowa 633, 637; *Whitehead's* case, 85 Ind. 85, at 86; *Arnold's* case, 155 Iowa 601, 604; *State v. Row,* 81 Iowa 138, 141.

We are not overlooking the approval given by *American Express Co. v. Des Moines Nat. Bank,* 177 Iowa 478, to the holding of *Mitchell v. Harcourt,* 62 Iowa 349, that, where it appears *on the face* of the question what the evidence sought to be introduced is, and that it is material, that suffices. The writer dissented because he believed, as he still does, that the face of the question cannot possibly settle what the answer will be. He gave other reasons for not following the *Mitchell* case which he still thinks are sound. But no individual criticism of the *Express Company's* case need be considered in determining what weight that case shall have on this appeal. The court has recently held that said decision does not change the rule but "distinguishes this rule." And we have enforced it as of old, and reaffirmed *Arnold v. Livingstone,* 155 Iowa 601, since deciding the *Express Company's* case. See *Biggs v. Carter,* 179 Iowa 284; *State v. Sayles,* 173 Iowa 374; *Whitney v. City of Sioux City,* 172 Iowa 336. In other words, the *Express Company's* case is an exception, to be applied only upon its peculiar facts. As no such facts exist in this case now before us, that disposes of the point for this case—as much so as if the decision had been overruled. We do not question that the rule puts some labor upon counsel, and that its enforcement may cause some delay of and some embarrassment in trial. The objection comes too late. That possibility was evident when each of the legion of decisions was made which establish the rule, and it was established notwithstanding. Evidently, the appellate courts have been of opinion that the advantages greatly outweigh the disadvantages.

Appellee has not urged that the record

**4. APPEAL AND**
**ERROR: briefs:**
**points and**
**arguments:**
**points noticed**
***sua sponte.***

fails to present a reversible error because it does not show what was lost to appellant. But that does not relieve us from noting the state of the record. The law raises the point that no reversible error is shown. *Heiman v. Felder,* 178 Iowa 740, at 747, Point 2-a. If, for illustration, appellant complained of the reception of testimony and the record showed there was no objection made, we could not reverse, though appellee made no argument.

II. A doctor offered by defendant tes-

**5. WITNESSES:**
**competency:**
**professional**
**communica-**
**tions: waiver.**

tified that he was called and visited plaintiff professionally about February 25, 1914. He was then asked: "Now, you may state what, if anything, you found the matter with her." He was not allowed to answer, on the objection that to permit it would violate the statute creating the privilege. He then testified that he again visited the plaintiff on the 26th of February, and had an idea what was the matter with her. He was then asked: "What was the matter with her?" To this, objection was sustained as before. Thereupon, he was asked: "Now, state whether or not there was any difference in the ailment of plaintiff, at the last time you visited her on the 25th and 26th of February, from that which you found in her at the previous visits before those days." To this, the same objection was made and sustained.

What we have already said seems to

**6. APPEAL AND**
**ERROR: harm-**
**less error:**
**prejudice:**
**burden: non-**
**sufficient rec-**
**ord on ex-**
**cluded ques-**
**tion.**

rule this. We cannot know what he would have said, had he been allowed to answer, as to what he did find was the matter with plaintiff. He might have said nothing was the matter. He might have said something was the matter that was utterly immaterial and irrelevant. We cannot know whether he would have said he found any

difference, or, if he had said there was one, that it was a material one.

That aside, there is an additional and special difficulty. In this case it would not be enough if it appeared that a relevant or material answer would have been given. On the face of the record, the witness was asked to testify upon what he found while attending the plaintiff in his professional capacity. Any answer he might give, no matter how relevant or material, would still be incompetent unless the patient's privilege was shown to have been waived. In this case, then, the appellant has the further burden of showing that the answer, if given, would not have constituted a breach of privilege. It is as essential that it be made to appear the answer would have been competent as to show it was admissible in other respects. *Emerick v. Sloan,* 18 Iowa 139; *Thurston v. Cavenor,* 8 Iowa 155; *Jenks v. Knott's M. S. M. Co.,* 58 Iowa 549. In fewer words, before appellant may ask reversal, the record must in some manner advise us that, if answer had been given, it was one that might rightly be given by a doctor who spoke to something which he had obtained in his professional capacity. In effect, the appellant does claim that this is the situation, and that, when the doctor was interrogated, it appeared of record that, as to his testimony, the plaintiff had waived her privilege. It but remains for us to determine whether this claim is well made.

The injury is alleged to have been sustained about the 26th day of February, 1914. The plaintiff testified concerning it, in effect, that it injured her left leg and left hip and made her arm sore; that it caused a numb feeling all through the lower part of the bowels and about the hips; that it made her feel sick; that she had hard work to get home and was sick and weak after she reached home, and remained in that condition for several days. A medical

*Marginal note:* 7. APPEAL AND ERROR: harmless error: prejudice: burden: sufficiency of record on excluded question.

witness for her testified, in effect, that his books show he first treated plaintiff on February 26th and continued to treat her for a day or two; that no other doctor was with him; that he discovered a tenderness in the region of the pelvis which could be ascertained only by feeling; that the muscles were on tension and comparatively hard; that he found some swelling and a tenderness between the navel and the pelvic bone, and some fever.

Did this testimony open the door to letting a doctor whom plaintiff did not call as a witness disclose what he obtained professionally during the period covered by the testimony adduced for plaintiff, to the extent of telling any and all things he then found the matter with her, and all differences in ailment then existing? In resolving this, one may not leave out of consideration the policy of the statute. That statute should have a liberal construction, because its purpose is to make it possible for every person to fully and fairly consult with a physician or submit himself to his examination without anticipation or fear that the confidence reposed may be broken in upon by a subsequent examination of the physician as a witness. *Battis v. Chicago, R. I. & P. R. Co.*, 124 Iowa 623, 626. The keeping in mind of the policy and object of the statute, and that it should be liberally construed to effectuate and attain these, have developed what will *not* waive the privilege. Eliminating what will not operate as a waiver will narrow what we have to decide.

As has been seen, it was the legislative intent that the patient might confide freely, and was not to be deterred therefrom by fear that this confidence would create opposing testimony. There is no punishment provided for the physician who reveals what has been confided to him. About all, then, that the statute could have aimed to do was to prevent revealing on the witness stand. It must have been understood by the legislature that those who made confidential revelations to physicians might enter into and

produce testimony in litigation wherein it would be very material, either as impeachment or otherwise, to have the physician disclose what he had been told, and it must have intended, therefore, that the occurrence of these conditions should not operate to waive the privilege. .It has, therefore, been held that such testimony is not made admissible because it will impeach (*Battis v. Chicago, R. I. & P. R. Co.*, 124 Iowa 623, at 627), nor because it will operate to defeat falsehood (*Battis v. Chicago, R. I. & P. R. Co.*, supra, *McConnell v. City of Osage*, 80 Iowa 293). And that the naked fact that plaintiff makes a witness of one of her doctors does not give consent that defendant may make one of any or all other of plaintiff's doctors and have them testify on the same general subject to which the witness of plaintiff spoke. The plaintiff may be willing to waive the objection as to a witness in whom he reposes special confidence, yet insist on it as to another. *Mellor v. Missouri Pac. R. Co.*, (Mo.) 16 S. W. 849; *Hoy v. Morris*, 13 Gray (Mass.) 519; *Hope v. Troy & L. R. Co.*, (N. Y.) 17 N. E. 873; *Burgess v. Sims Drug Co.*, 114 Iowa 275, 281; *Baxter v. City*, 103 Iowa 599; *Dotton v. Village of Albion*, (Mich.) 24 N. W. 786; *McConnell v. City of Osage*, 80 Iowa 293, 301. These are not inconsistent with the rule established by cases like *Woods v. Incorporated Town of Lisbon*, 150 Iowa 433, at 435, which has attention elsewhere herein. In them, the waiver arises from the nature of the lifting of the veil, not from what sort of witness the plaintiff lifts it with. Upon this, some narrow exceptions have been grafted, as where a doctor is sued for malpractice and the plaintiff gives her version of the treatment received; or where exclusion would operate as a shield to crime (*State v. Grimmell*, 116 Iowa 596); or where a client goes upon the stand in an attempt to secure some advantage by reason of transactions between him and counsel, in which case he waives the right to object that the other side call the same

attorney to obtain his account of the same matter.  *Kelly v. Cummens,* 143 Iowa 148, at 151.  These exceptions do not govern here, and the rule stands.  It follows as a corollary that a waiver of the privilege as to one transaction will not operate to waive it as to other and independent transactions.  In *Nolan v. Glynn,* 163 Iowa 146, at 150, plaintiff testified that, in April, 1907, a Dr. Sherman gave her medicine to produce an abortion;  the doctor denied this, but said he had given her similar medicine in 1905.  He was not allowed to say for what purpose, nor whether it was to be used following an abortion, and we said:

"Undoubtedly in testifying to receiving the tablets in April, 1907, and their purpose, she waived the right to insist on the protection of the statute excluding the physician's testimony concerning the same (*Woods v. Incorporated Town of Lisbon*), but only as to matters concerning which she spoke.  What the doctor may have done two years previous she did not allude to, and as to that his lips were sealed."

We said further:

"What their purpose was then [in 1905] would throw no light on the transaction in 1907, and would tend to open up professional matters on which plaintiff had the right to have him remain silent."

We approved *Treanor v. Manhattan R. Co.,* 16 N. Y. Supp. 536, which holds testimony of a physician admissible when related "to the precise matters concerning which the complainant had testified," and that, therefore, the implied waiver related thereto, and not to an independent transaction.  We know what the plaintiff and her medical witness disclosed as to some physical conditions, at or about the time to which it was attempted to have the doctor for defendant speak.  We have no way of knowing that, if the other had spoken, the answers would have been confined to what the plaintiff and her witness had revealed.  In *State v. Ben-*

*nett*, 137 Iowa 427, at 430, 431, the physician was allowed to testify because he spoke only to the "very suggestion" made by him to which his patient had already testified. In *Reed v. Rex Fuel Co.*, 160 Iowa 510, at 518, 519, the plaintiff had testified in chief that he made certain complaints to his attending physician, and he showed those very complaints by other witnesses; and we held that the physician might say what complaints, if any, were made to him on that precise occasion. Neither of these help the appellant. On the other hand, in *Battis v. Chicago, R. I. & P. R. Co.*, 124 Iowa 623, at 627, the plaintiff testified he was unconscious at a stated time, and it was held his attending physician might not be interrogated as to whether he then found plaintiff conscious or unconscious. And in *McConnell v. City of Osage*, 80 Iowa 293, at 298, 299, the plaintiff gave evidence as to her ailments in the past, and that Dr. Chase was her attending physician during the period covered by this testimony; but it was held that this did not permit the physician to speak to confidential communications necessary to the treatment of the plaintiff. If, then, the privilege was waived in this case, it must be because of cases like *Woods v. Incorporated Town of Lisbon*, 150 Iowa 433, 435, 436. In their essence, these proceed upon the ground that, if the patient fully reveals her condition when treated by stated physicians, and what that treatment was, and the revelation is of a character which exposes matters which it would ordinarily be desired to keep private, that then these very physicians may testify concerning this same subject matter. Whether this be an exception to or an application of the rule is immaterial, because the facts upon which it is applied are utterly absent here.

These cases are within the statement of 4 Wigmore, Evidence, Sec. 2388, approved in *Nolan v. Glynn*, 163 Iowa 146, at 150, that:

"A waiver is to be predicated, not only when the conduct indicates a plain intention to abandon the privilege, but also when the conduct (though not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege. It is not to be both a sword and a shield."

What is ruled by cases like that of *Woods v. Lisbon* is made quite plain by the nature of what plaintiff revealed, and by our statements in the opinion, such as:

"Manifestly, if the patient himself breaks the seal of secrecy and gives publicity to the whole matter, there is a waiver, and this is true whether publicity is given by the testimony of the physician, by the testimony of the patient himself, or by the testimony of his other witnesses.   *   *   * It would be a reproach to the administration of justice, even in the absence of the statute, if the patient himself might detail all that occurred with his physician and yet compel the physician to remain silent.

"* * * The plaintiff and her husband testified as to what was done when she was first taken to the hospital and thus opened the door for the testimony of her physicians on the same subject.   *   *   *   Where two or more physicians are engaged in the same operation, a waiver of the prohibition of the statute by making public the otherwise privileged matter makes them all competent witnesses."

We find no applicability in *Nugent v. Cudahy Packing Co.,* 126 Iowa 517, at 523, which merely holds that, where defendant brings out that a physician found plaintiff unconscious, whereupon plaintiff brings out the same fact in a preliminary examination addressed to whether the witness was accepted as plaintiff's doctor, there is no waiver, and such examination brought out no affirmative evidence of a material fact on plaintiff's behalf, and would not make ad-

missible further testimony as to plaintiff's condition.

We find no reversible error, and the judgment appealed from must be—*Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.